HOLLINGSWORTH ROOFING
COMPANY, Appellant,

v.

Carol MORRISON, Appellee.

No. 2–83–139–CV.

Court of Appeals of Texas,
Fort Worth.

March 29, 1984.

Moseley, Jones, Allen & Fuquay and Linda D. Jones and Laura L. Worsham, Dallas, for appellant.

Gandy, Michener, Swindle, Whitaker, Pratt & Mercer and Jeffrey W. Storie, Fort Worth, for appellee.

Before HUGHES, ASHWORTH and HILL, JJ.

## OPINION

HILL, Justice.

This is a breach of contract suit for damages brought under the Texas Deceptive Trade Practices Act by appellee and plaintiff below, Carol Morrison, against the appellant and defendant below, Hollingsworth Roofing Company, hereinafter referred to as Hollingsworth. The case was tried to the court, and judgment was entered in favor of appellee in the amount of $2,020.00 as actual damages, plus an additional amount of $5,060.00 as provided in TEX.BUS. & COM.CODE ANN. § 17.-50(b)(1) (Vernon Supp.1984), plus reasonable attorney's fees.

We affirm in part and reverse and render in part.

In May, 1980, Morrison entered into a written contract with Hollingsworth whereby appellant would repair appellee's roof. The agreement provided that appellee's swimming pool was to be covered with polyethylene during the repair because hot tar was to be used on the roof. The pool, however, was left uncovered throughout the repair process even though appellee again requested one of appellant's employees to cover the pool.

In June, 1980, after the repairs were completed, appellee noticed black specks on

the surface of her pool, on a pool float, and on a garden hose. Appellee notified appellant who, after inspecting the pool, concluded that the specks were not roofing tar and refused to accept responsibility. Appellee timely sent written notice to appellant of her intent to seek redress under the Deceptive Trade Practices Act.

Appellant brings this appeal on four points of error. In its first point, appellant asserts that the trial court erred in concluding that the damage to appellee's pool, if any, was caused by appellant. More specifically, appellant argues that there was no evidence or insufficient evidence to support the trial court's conclusions that the substance was roofing tar, and that appellant was responsible for the substance being in the pool.

In our review of appellant's "no evidence" point, it is fundamental that the court's fact findings be upheld if there is more than a scintilla of evidence in support thereof. *Stedman v. Georgetown S. & L. Ass'n*, 595 S.W.2d 486, 488 (Tex.1979). There is some evidence, more than a scintilla, if the evidence furnishes some reasonable basis for differing conclusions by reasonable minds as to the existence of the vital fact. *Kindred v. Con/Chem, Inc.*, 650 S.W.2d 61, 63 (Tex.1983). Moreover, in testing these findings, we must review the evidence in its most favorable light, considering only the evidence and inferences which support the findings and rejecting the evidence and inferences contrary to the findings. *Stedman, supra;* Calvert, *"No Evidence" and "Insufficient Evidence" Points of Error*, 38 TEXAS L.REV. 361 (1960).

On the other hand, when we confront a challenge that the evidence is insufficient, we must consider and weigh all the evidence in the case, including that which is contrary to the judgment. *Burnett v. Motyka*, 610 S.W.2d 735, 736 (Tex.1980). We must determine whether the judgment was so against the great weight and preponderance of the evidence as to be manifestly unjust. *In re King's Estate*, 150 Tex. 662, 244 S.W.2d 660, 661 (1951). In other words, this court must decide if the evi-

dence which supports the judgment is so weak, or the evidence to the contrary is so overwhelming as to warrant a setting aside of the judgment and remanding for a new trial. *See Garza v. Alviar*, 395 S.W.2d 821, 823 (Tex.1965); Calvert, *supra.*

Carol Morrison testified that she had the opportunity to watch Hollingsworth's men move tar from the ground level to her roof in buckets. She said that they went up a ladder which was within two or three feet from her pool. A photograph showing how close this was to the pool was admitted into evidence. She first noticed a tar-like substance in her pool within a month after the work on her roof was completed as she was vacuuming the pool. Someone else pointed the specks out to her. She said she felt that the substance in her pool was tar, that it appeared to be a tarry substance. She said that she had never noticed any tar or black specks in her pool before the repair, and that she was not aware of anything in the interim other than the repair of her roof which might have caused the black specks in her pool, because no one else was around the house or even close to the pool. She further testified that she applied black algae preventative to the pool. She said that the specks were of different sizes, with some being the size of pinheads and the others being the size of pinpoints. She said that she didn't know exactly what it was and didn't know how it got there. She testified that there were several hundred specks. She also pointed out that two floats lying close to the ladder when the Hollingsworth men took the roofing tar up had tar all over them and had to be destroyed.

Glenn Tucker testified that he was the owner of Glenn Tucker Tile and Pool Service, and that he had worked for four years in the pool construction business. He said that he inspected the pool in August, 1982. He saw "black stuff" which appeared to be on the side of the pool but was "kind of stringy" on the wall closest to the house. There were also some "speckledy" places in the pool. Some of the substance was on the floor. He said that it was pliable. He

also indicated that the substance was hard, but that he could still stick his fingernail in it. He testified that there was no way that the material could be black algae, and that he knew of no type of algae growth that might cause a stain like this substance did. He said that he was not aware of anything else that the substance, which was made up of an oily residue, could possibly be other than tar.

Bruce Hollingsworth testified that he was the vice president of Hollingsworth Corporation. He said that he examined Morrison's pool in June, 1980 and was unable to determine what was in the pool. He pointed out that when tar hits water, it goes back to a solid and usually balls up. He said it does not stick, it just floats. He stated that he just assumed that the specks in Morrison's pool were tar.

We find the evidence to be sufficient to support the conclusion that the substance in the pool was tar and to support the conclusion that the defendant was responsible for the substance being in the pool. Point of error number one is overruled.

Appellant argues as his second point of error that the trial court erred in awarding damages under the Deceptive Trade Practices Act because appellant was not given proper notice.

■ As a prerequisite to filing a suit seeking damages under this Act, the complainant must give written notice to the adverse party advising that person of the consumer's specific complaint *and* the amount of actual damages and expenses, including attorney's fees, incurred by the consumer in asserting the claim against the defendant. TEX.BUS. & COM.CODE ANN. § 17.50A(a) (Vernon Supp.1984). As previously mentioned, appellee did tender timely written notice to appellant of her intent to seek redress under the Deceptive Trade Practices Act; however, no specific amount of damages was mentioned. Appellee merely stated the nature of her claim, and that she was in the process of obtaining an estimate of the damages.

■ The notice in question does not fulfill the requirement of § 17.50A in that it does not advise the appellant of the

amount of actual damages. A suit may not be brought until the notice required by § 17.50A has been given. The defect in the notice in this case was brought to the attention of the trial court before trial. At that point the trial court should have abated the proceeding for 30 days. *See Hutchinson v. Wood,* 657 S.W.2d 782 (Tex.1983); *Schepps v. Presbyterian Hosp. of Dallas,* 652 S.W.2d 934 (Tex.1983). We hold that in a deceptive trade practices action, where the required notice under § 17.50A was not given, and where the action was not abated for 30 days prior to trial on the merits, the appellee is not entitled to receive punitive damages under the Deceptive Trade Practices Act. *See Jim Walter Homes, Inc. v. Geffert,* 614 S.W.2d 843, 845 (Tex.Civ.App. —Corpus Christi 1981, writ ref'd n.r.e.). The application of the rule will not deprive the appellee of her entire recovery in that she will still receive her actual damages and, since the claim is on a contract and the provisions of TEX.REV.CIV.STAT.ANN. art. 2226 (Vernon Supp.1984) have been followed, her attorney's fees. Following the rule of *Hutchinson, supra,* and *Schepps, supra,* by reversing and then abating the cause for 30 days, after there has already been a trial on the merits, would defeat the basic purpose of the notice requirement contained in the Act, which is to encourage settlement and avoid the costs of litigation. Point of error number two is sustained.

Appellant contends, in its third point of error, that the trial court erred in awarding $2,020.00 in actual damages as there was no evidence or insufficient evidence to support such an award. He specifically complains of the award of $2,000.00, which was the cost to replaster the pool.

Glenn Tucker testified that the best way to repair the swimming pool would be to replaster it. He said that replastering was necessary in order to remove the spots and any of the effect that they may have had on the pool. He stated that if it were just taken off by an acid wash, it would leave an oily residue in the plaster which would result in a grayish-looking color. He also said that an acid wash would eat away the

top coat of plaster and rough up the pool a little bit. He testified that he did not believe in painting Gunite swimming pools because there is no good pool paint which stays on long enough and because the pool would be more slippery painted than if plastered. He said that a reasonable fee to replaster the pool in Tarrant County, Texas, in June, 1980 would be $2,000.00.

 The proper measure of damages when the injury to realty is repairable is the reasonable cost of repairs necessary to restore the property to its prior condition. *Moren v. Pruske,* 570 S.W.2d 442, 444 (Tex. Civ.App.—San Antonio 1978, writ ref'd n.r. e.). We hold that the evidence is sufficient to sustain the trial court's award of damages. The appellant complains that since the pool was in need of replastering anyway that its value would be enhanced by the replastering. The party urging such a contention has the burden to show that the repair, as made, resulted in an enhancement of value. *Pasadena State Bank v. Isaac,* 149 Tex. 47, 228 S.W.2d 127, 129 (1950); *McCullough-Baroid Petroleum Service v. Sexton,* 618 S.W.2d 119, 120 (Tex.Civ.App.—Corpus Christi 1981, writ ref'd n.r.e.). The appellant produced no evidence establishing any enhanced value as a result of the repair. Appellant's point of error number three is overruled.

In its final point of error, appellant argues that the trial court erred in awarding treble damages because there were no pleadings to justify such an award, and because appellee judicially admitted that treble damages were not justified in this case. Because we have sustained appellant's second point of error concerning punitive damages under the Deceptive Trade Practices Act, we find further discussion of this point of error unnecessary to the disposition of this cause.

Judgment of the trial court is reformed to omit punitive damages under the Deceptive Trade Practices Act so that the plaintiff has judgment against the defendant for the sum of Two Thousand Twenty and no/100 Dollars actual damages plus reasonable and necessary attorney's fees as provided for in the trial court's judgment of July 15, 1983, including attorney's fees on appeal. Costs of appeal are charged one-half to appellant and one-half to appellee.