Mary Pearl WILLIAMS, et vir., appellants,

v.

The HILLS FITNESS CENTER, INC., Appellee.

No. 9351.

Court of Appeals of Texas, Texarkana.

Nov. 26, 1985.

Rehearing Denied Dec. 31, 1985.

**190**

cally injured while using the Center's exercise equipment. The action for damages was grounded upon common law negligence and violation of the Texas Deceptive Trade Practices Act, Tex.Bus. & Com.Code Ann. § 17.41, et seq. (Vernon Supp.1985). Special issues to determine negligence and associated facts were submitted to the jury. No special issues were submitted upon alleged violations of the Deceptive Trade Practices Act. Judgment was entered and damages awarded upon the jury's answers to the special issues submitted. The Williams have appealed.

At the close of the evidence, and before submission of the case to the jury, the trial court granted, over objection, the Center's motion for partial instructed verdict thereby denying the Williams' claim for relief grounded in the Deceptive Trade Practices Act. By granting the motion the trial court determined, as a matter of law, one or more of the following circumstances: that (1) Mary Pearl Williams was not a consumer, (2) the alleged violations were not a producing cause of damage to her, or (3) the Williams failed to comply with the notice requirements of Section 17.50A(a) of the Act.

Broadus A. Spivey, Spivey, Griggs & Kelly, Austin, for appellants.

Richard McCarroll, Michael G. Mullen, Brown, Maroney, Rose, Barber & Dye, Austin, for appellee.

Before CORNELIUS, C.J., and BLEIL and CHADICK *, JJ.

CHADICK, Justice (Retired).

Mary Pearl Williams and her husband, Jerre S. Williams, sued Hills Fitness Center, Inc., alleging Mrs. Williams was physi-

The Williams disagree with the trial court's action on the instructed verdict motion and by appropriate points of error direct attention to the alleged error in the trial court's action. The Center counters the Williams' points by a reply point and reduces the questions for review by only briefing the notice issue and a phase of the consumer issue.

Within the description of consumers found in Section 17.45(4) is an individual who seeks [1] or acquires any goods or services [2] by purchase or lease. Status as a

---

* Honorable T.C. Chadick, Justice, Supreme Court of Texas, Retired, sitting by assignment. Justice Hutchinson, originally a member of the panel, did not participate because of illness.

1. The American Heritage Dictionary of the English Language defines the verb "seek" as:
 1. To try to locate or discover; search for.
 2. To endeavor to obtain or reach. 3. To move to; go to or toward: water seeks its own

level. 4. To inquire for; request. 5. To try; endeavor. 6. Obsolete....

2. *Van Zandt v. Fort Worth Press,* 359 S.W.2d 893 (Tex.1962), quotes from *Levitt v. Faber,* 64 P.2d 498 (Cal.App. Dep't Super.Ct.1937), where it is said: "'[S]ervices' may be rendered though the actual labor to be performed by one's employees and by means of his machinery or other equipment, ...."

consumer is established by relationship to a transaction. *Flenniken v. Longview Bank and Trust Company,* 661 S.W.2d 705 (Tex. 1983); *Cameron v. Terrell & Garrett, Inc.,* 618 S.W.2d 535 (Tex.1981). These cases hold that when there is proof a person seeks goods or services by lease or purchase and the goods or services form the basis of the person's complaint, such person is a consumer for the purpose of relief authorized by Section 17.50.

■ The Center's brief concedes that Mrs. Williams visited the Center because she was considering joining its health club and wanted to inspect facilities. But its position is that she was not seeking services, just visiting and inspecting. Mrs. Williams did not then or thereafter apply for or become a member of the Center's health club or pay the Center anything of value.

The services offered by the Center to its health club membership was use of a comprehensive facility designed for physical evaluation and the development of tailormade and medically assisted physical exercise programs as a way of managing stress and improving physical soundness, a service that included use of its exercise machines and equipment. That Mrs. Williams was seeking services purportedly afforded to members of the Center's health club is evidenced by her visit to the Center and her inspection of its facilities, including her experimental use of an exercise machine under the supervision of the Center's director, at which time she claims to have been injured. The visit and other evidence show she was interested in physical fitness and her actions can well be considered a search for and an effort to locate or discover services described in the Center's promotion and offer of membership in its health club. Membership could be acquired by purchase.

In a claim for reparation under Section 17.50 to seek, as well as to acquire, to reach, as well as to grasp, is activity that qualifies a person as a consumer of goods or services that may be acquired by purchase or lease, when the goods or services form the basis of the person's claim. The language of Section 17.45(4) legitimizes as a consumer the proverbial lady who tries on every hat in the millinery shop and buys none, as well as the lady who buys. *Flenniken,* supra, holds that a contractual relationship with a supplier of goods or services is not prerequisite to status as a consumer. The fact issue of whether or not Mrs. Williams was a consumer was raised by the evidence. An instructed verdict should not have been granted on this phase of the issue. *Chambless v. Barry Robinson Farm Supply,* 667 S.W.2d 598 (Tex. App.—Dallas 1984, writ ref'd n.r.e.); *Texas Construction Service Co. v. Allen,* 635 S.W.2d 810 (Tex.App.—Corpus Christi 1982, writ ref'd n.r.e.).

The Center does not brief or contend that the services Mrs. Williams was allegedly seeking do not form the basis of her complaint. Consideration of that phase of the consumer issues is unnecessary. For the same reason the producing cause issue will not be further noticed. An instructed verdict should not have been granted on either ground. *Id.*

■ Finally, the trial court sustained the Center's contention that the offer of settlement notice Mrs. Williams gave the Center did not comply with the provisions of Section 17.50A(a). Timeliness of the notice given is not in question, but whether the notice complied with the requirements that notice advise the one notified "of the consumer's specific complaint and the amount of actual damages and expenses, including attorney's fees, if any, reasonably incurred by the consumer in asserting the claim ..." is at issue.

Mrs. Williams' notice letter contains these four paragraphs:

We have been retained to represent Judge Mary Pearl Williams. She has authorized us to demand compensation for the damages she suffered in connection with her visit to The Hills Fitness Center, Inc., a/k/a The Hills Medical Specialty Center, a/k/a The Hills Medical Sports Complex, a/k/a Hills Physical Therapy Center on May 5, 1980.

Liability for these damages is based on several legal theories. The failure to comply with the implied warranty of fitness for the purposes intended of the equipment in question, representing that the machinery had qualities which it did not possess and other deceptive trade practices under the Texas Deceptive Trade Practices Act. In addition to these deceptive trade practices, express warranties and the implied warranties of merchantability and fitness for a particular purpose created under the Uniform Commercial Code were breached giving rise to a cause of action pursuant to § 17.50(a)(2) of the Texas Bus. & Comm. Code (the Deceptive Trade Practices Act —DTPA). Other acts which were committed by you are outlined in § 17.-46(b)(5), (7) and (23) of the DTPA and are also outlawed, creating an action under § 17.50(a) of the DTPA. Furthermore, responsibility for Judge Williams' damages are also based on the doctrine of strict liability for injuries caused by defective products placed in the stream of commerce.

Judge Williams, because of this unlawful conduct, has suffered substantial damages in the amount of at least $500,-000.00. That amount includes, but is not limited to, damages for the considerable expenses involved in treating her injuries, medical expenses, physical and mental pain and suffering, mental anguish, and permanent injuries. If it is necessary to litigate this matter, we expect to recover reasonable attorney's fees of one-third of the amount recovered. At trial we expect to prove that the violations of the DTPA were committed knowingly and under circumstances entitling Judge Williams to treble her actual damages over $1,000.00.

Please contact us as soon as possible in the event you are interested in discussing a possible settlement of this claim without the need for litigation. If we have not received appropriate compensation for damages incurred by Judge Williams within thirty days of your receipt of this letter, we will have no alternative but to advise Judge and Mrs. Williams to file suit against you.

The Deceptive Trade Practices Act must be liberally construed to promote its underlying purposes. *Big H Auto Auction, Inc. v. Saenz Motors,* 665 S.W.2d 756 (Tex. 1984); *Chrysler Corp. v. Roberson,* 619 S.W.2d 451 (Tex.Civ.App.—Waco 1981, no writ); Tex.Bus. & Com.Code Ann. § 17.44 (Vernon Supp.1985). Necessarily, it follows that Section 17.50A(a) must be similarly construed.

The record shows the Center's director, a physician, was present on May 5, 1980, and in attendance upon Mrs. Williams at the time of her claimed injury. He gave her his opinion that she would have a sore back and she returned several times to the Center for medical treatment of her injury.

As to specific complaint requirement of Section 17.50A(a) it is to be seen from the quoted letter that demand for compensation for Mrs. Williams' damages suffered on her visit to the Center May 5, 1980, is set out in the first paragraph. In the second paragraph, the letter states Mrs. Williams' theory of the Center's liability for her damage. The third paragraph asserts that because of the Center's unlawful conduct she suffered damages arising out of injuries, physical and mental pain and suffering, mental anguish, and permanent injuries. The first and third paragraphs read together advised the Center that Mrs. Williams' specific complaint was that the damages that resulted from the Center's unlawful conduct on May 5, 1980, arose out of physical injuries impliedly received on that date. The Center had firsthand, direct knowledge of Mrs. Williams' injury at and from the time it occurred. The Center could not have been uncertain or in doubt as to the specific physical injury and complaint her notice letter referred to.

Further, did the letter advise the Center of the amount of actual damages and expenses, including attorney's fees, if any, reasonably incurred by Mrs. Williams in asserting her claim? The legislative direction to the courts in Section 17.44 to

construe and apply the provisions of the Act in such way as to promote the Act's underlying purposes tempers the provision of Section 17.50A(a) to a requirement that advice as to actual damages and attorney's fees be as accurate and informative as the consumer can reasonably make it under the circumstances of the case.

Actual damages as used in the statute means damages recoverable at common law. *Raye v. Fred Oakley Motors, Inc.*, 646 S.W.2d 288 (Tex.App.—Dallas 1983, writ ref'd n.r.e.). Damages for personal injuries are unliquidated and not subject to precise mathematical calculation. *Amoco Production Co. v. Thompson*, 657 S.W.2d 824 (Tex.App.—Corpus Christi), *rev'd on other grounds sub nom., Ideal Lease Service v. Amoco Production Co.*, 662 S.W.2d 951 (Tex.1983). Damages of not less than $500,000.00 are stated in the letter. This statement, in the context of a demand for payment, could reasonably be understood only as a demand for that specific sum.

The letter's reference to attorney's fees implies that none had matured at the time it was written. The implication of no accrued or matured attorney's fee at the time of the notice is in the statement that if the claim is litigated a reasonable attorney's fee of one-third of the amount recovered would be sought. The statute only requires that the letter advise the amount of attorney's fees that had then matured.

Unless expense had been incurred there is no obligation under Section 17.50A(a) to mention expense. The duty imposed was to list expense; omission of expense implies none had accrued at the time of the notice.

An underlying purpose of Section 17.50A(a) is to encourage settlements by affording a potential defendant an opportunity to limit damages and expense by making a settlement offer. This section confers a valuable right upon a potential defendant which should not be impaired by doubtful construction. Neither should form be allowed to prevail over substance; that is to say, that a harmless failure or deficiency in notice should not be allowed to deprive an injured person from prosecuting a claim. The sufficiency of notice of a specific complaint may properly be determined by looking to facts indisputably known to the potential defendant. *Chrysler Corp. v. Roberson*, supra. The Center could not have been uncertain or in doubt as to the specific complaint, the injury, the monetary damage, attorney's fees or expense then claimed. The notice letter combined with what was unquestionably known to the Center substantially complied with the purposes and requirements of Section 17.50A(a).

Appellant's first three points of error are sustained. The judgment is reversed and the case remanded for a new trial on the pleadings of the parties.