The INTERNATIONAL NICKEL CO., INC., Plaintiff-Appellant,

v.

TRAMMEL CROW DISTRIBUTION CORP., Defendant-Appellee.

No. 85–2855.

United States Court of Appeals, Fifth Circuit.

Oct. 24, 1986.

Thomas A. Croft, Porter & Clements, Mark K. Glasser, Gregory A. Bolzle, Houston, Tex., for plaintiff-appellant.

Douglas W. Lyons, Jr., M. David Frock, Houston, Tex., for defendant-appellee.

Before REAVLEY and POLITZ, Circuit Judges, and BELEW,* District Judge.

REAVLEY, Circuit Judge:

This case involves the unexplained disappearance of a large amount of nickel from a warehouse. The International Nickel Company (INCO), owner of the nickel, obtained a summary judgment against the warehouse owner, Trammel Crow Distribution Corporation (Trammel Crow). However, Trammel Crow prevailed because the judgment gave effect to a limitation of liability clause in the warehouse contract, and INCO was awarded only a fraction of its actual damages. INCO seeks to avoid the limitation clause and recover its full actual damages. We reverse the summary judgment because of a material fact issue.

I.

INCO began storing its nickel in Trammel Crow's warehouse in March of 1978, and continued doing so under a series of written contracts until January of 1983. Each of the contracts limited Trammel Crow's liability in the event the nickel was lost or damaged. Initially, the limitation was set at 200 times the "base storage rate" for the nickel. Later, and at the time the nickel was discovered lost, the limitation was set at 100 times the base storage rate. The contracts also provided that Trammel Crow would physically inventory the stored product once a year.

* District Judge of the Northern District of Texas, sitting by designation.

In April 1982 Trammel Crow notified INCO, in response to a request from INCO for shipment of part of the nickel, that 2,755 pounds were missing. In September 1982, this time as a result of a physical inventory, 46,000 pounds were discovered missing. Finally, in January 1983, again in response to a shipment request, Trammel Crow reported that 14,000 pounds were missing. Shortly thereafter, INCO removed all of its nickel from the warehouse. At that time it was determined that a total of 71,265 pounds was missing. Neither party has offered any explanation for the loss.

INCO filed this diversity action seeking recovery of the full market value of the lost nickel. That value exceeded $260,000, while the damages recoverable under the limitation of liability clause amounted to $11,491. INCO further sought to recover under the Texas Deceptive Trade Practices Act (DTPA), claiming that certain of Trammel Crow's conduct was false and misleading. INCO also sought $1,680 in storage fees charged for the missing nickel, attorney's fees, and prejudgment interest.

The district court, applying Texas law and granting Trammel Crow's motion for summary judgment, awarded INCO $13,171, the amount of the limited damages together with the excess storage charges. The court rejected the DTPA claims, and refused to award attorney's fees or prejudgment interest. In enforcing the limitation of liability clause, the court rejected INCO's three arguments that the clause was unenforceable because it lacked specificity, or because Trammel Crow converted the nickel, or because Trammel Crow is equitably estopped to assert the limitation clause. INCO challenges all of these rulings.

## II.

INCO first argues that the limitation of liability clause is unenforceable for lack of specificity. The district court concluded that clause was sufficiently specific. We agree.

■ INCO's argument is based on section 7.204(b) of the Texas Business and Commerce Code Annotated (Vernon 1968). That section states that "[d]amages may be limited by a term in the warehouse receipt or storage agreement limiting the amount of liability in case of loss or damage, *and setting forth a specific liability per article or item, or value per unit of weight*" (emphasis added). Arguing that under Texas law limitation of liability clauses are strictly construed against the bailee, *see Allright, Inc. v. Elledge*, 515 S.W.2d 266, 268 (Tex.1974), INCO contends that the limitation clause in this case fails to satisfy the Code requirement that liability be set per item or unit of weight. INCO argues that "base storage rate," the basis upon which the limitation here is set, is not defined in the contract and that INCO had no way of determining the actual extent of the limitation.

The phrase "base storage rate" is not, in fact, explicitly defined in the contract. Reading the contract as a whole, however, there can be no doubt as to the phrase's meaning. Section 4 of the contract states that all storage charges are "per package or other agreed unit per month" and the face of the contract shows that the parties agreed to charges based on weight. The contract states that the monthly storage rate is $.08 per hundred weight for drums containing between 110 and 1000 pounds and $.16 per hundred weight for 2000 pound drums. The limitation clause obviously limits liability to 100 times these rates and thus complies with the code requirement that liability be limited either per item or unit of weight.

■ INCO nonetheless asserts that the clause is insufficient because the storage rate could have been tied to square footage or some other unit and because the contract also provided that the rates may change if the product deposited for storage differed from that declared in the contract. Neither of these facts, however, render the clause ineffective. That the storage rate could have been tied to some other measure or that it could have varied with the

type of product does not change the fact that in this contract the rate was unambiguously based on weight and no product variation existed. At bottom, INCO's assertions are based on its contention that it could not determine its storage rate, and thus its exposure to risk, from the contract. Examination of the contract, however, makes this contention incredible, as does the fact that INCO paid its storage charges without difficulty or protest for several years and does not now dispute the computation of damages under the limitation of liability clause.

Our ruling here is consistent with the decisions of other courts that have dealt with contracts containing limitation of liability clauses similarly tied to the "base storage rate." *See Sun Valley, Inc. v. Southland Bonded Warehouse, Inc.,* 171 Ga.App. 233, 319 S.E.2d 91 (1984); *Inland Metals Refining Co. v. Ceres Marine Terminals, Inc.,* 557 F.Supp. 344, 350 n. 9 (N.D.Ill.1983). INCO relies in part on *Modelia, Inc. v. Rose Warehouse, Inc.,* 5 U.C.C.Rep.Serv. 1004 (N.Y.Sup.Ct.1968), which refused to enforce a limitation of liability clause. That case, however, involved a clause that limited liability to $50 per deposit of goods, regardless of the amount or value of the goods in the deposit, and has no application to the clause here which limits liability according to weight.

### III.

INCO next argues that the limitation of liability clause cannot be enforced here because the provision of the Texas Business and Commerce Code that permits such clauses does not allow them to be enforced when the warehouseman has converted the goods to his own use. *See* Tex. Bus. & Comm.Code Ann. § 7.204(b) (Vernon 1968). INCO offers no proof that Trammel Crow converted the goods. Instead, it argues that where, as here, a warehouseman fails to deliver stored goods to their owner and can offer no explanation for the failure, the warehouseman should be rebuttably presumed to have converted the goods. The district court concluded that no such presumption exists. We agree.

Texas has long held that negligence is presumed when a bailee has received goods for storage and either returns them in damaged condition or fails to return them at all. *See Trammel v. Whitlock,* 242 S.W.2d 157, 159 (Tex.1951); *Buchanan v. Byrd,* 519 S.W.2d 841, 843 (Tex.1975). The presumption is based on the "just and common sense view that the party in possession or control of an article is more likely to know and more properly charged with explaining the damage to it or disappearance of it than the bailor who entrusted it to his care." *Trammell,* 242 S.W.2d at 159. Although not explicit in its judgment, the district court apparently relied on this presumption in finding Trammel Crow liable to the extent permitted under the limitation of liability clause.

INCO argues that the reasons supporting a presumption of negligence in cases such as this support a further presumption of conversion. INCO asserts that if conversion is not presumed, a warehouseman who has limited his damages in the case of negligence can convert the goods to himself, plead ignorance as to the cause of the loss of goods, and be held liable only for a fraction of the value of the goods he has converted. Without the aid of a presumption, INCO argues, the bailor has no way to prove that such an unscrupulous bailee has converted his property. INCO cites cases that have adopted a presumption of conversion based on these premises. *See I.C.C. Metals, Inc. v. Municipal Warehouse Co.,* 50 N.Y.2d 657, 409 N.E.2d 849, 431 N.Y. S.2d 372 (1980); *Joseph H. Reinfeld, Inc. v. Griswold & Bateman Warehouse Co.,* 189 N.J.Super. 141, 458 A.2d 1341 (1983). INCO further asserts that because Texas courts have not explicitly rejected a presumption of conversion in circumstances such as are present here, this court is free to adopt its arguments and presume a conversion.

While INCO is apparently correct that no Texas court has specifically considered and rejected a presumption of conversion, we

do not find ourselves free to adopt the rule INCO urges. In the absence of controlling Texas authority, we must reach the decision we think a Texas court would reach. *See Sonat Exploration Co. v. Mann,* 785 F.2d 1232, 1234 (5th Cir.1986). In light of the long line of Texas cases holding that a presumption of negligence exists when a bailee is unable to return bailed goods, we cannot readily conclude that a Texas court would make the leap to a presumption of conversion. We further note that several courts have considered and rejected the position INCO urges. *See Western Mining Corp. v. Standard Terminals, Inc.,* 577 F.Supp. 847 (W.D.Pa.), *aff'd,* 745 F.2d 49 (3d Cir.1984); *Adams v. Ryan & Christie Storage, Inc.,* 563 F.Supp. 409 (E.D.Pa.), *aff'd,* 725 F.2d 666 (3d Cir.1983); *Inland Metals Refining Co. v. Ceres Marine Terminals, Inc.,* 557 F.Supp. 344 (N.D.Ill. 1983); *see also Sanfisket, Inc. v. Atlantic Cold Storage Corp.,* 347 So.2d 647 (Fla. Dist.Ct.App.1977). We are hesitant, in determining state law in a diversity case, to adopt a rule not shared by a majority of courts. *Cf. Sonat Exploration,* 785 F.2d at 1234. Finally, we note that while presuming negligence is entirely reasonable when a bailee fails to deliver goods it has contracted to store in its warehouse, presuming in every case in which a limitation of liability clause exists that the bailee has intentionally and wrongfully converted the goods to his own use is not so reasonable and arguably imposes an undue burden on the bailee. In light of these considerations, we agree with the district court's ruling that no presumption of conversion exists under Texas law.

## IV.

INCO's final attack on the enforceability of the limitation of liability clause is that Trammel Crow is equitably estopped from asserting the clause. The district court rejected this claim on the ground that "there was no evidence that Trammel Crow committed a knowing, misrepresentation of any material facts upon which INCO relied to its detriment" and that INCO was negligent in failing to promptly remove its nickel from the warehouse once it learned that some nickel had disappeared. It is at this point that we disagree, because we find material fact issues in the summary judgment record.

■ INCO's equitable estoppel argument is based on its allegations that Trammel Crow failed to conduct inventories as required by the contract and that it further represented to INCO that it was in fact conducting the inventories. INCO asserts that it relied on the annual inventories as an important form of loss control and that had Trammel Crow conducted the inventories as represented, INCO might have been able to prevent its losses.

The contract provided: "One complete physical inventory will be conducted annually free of charge." Trammel Crow conceded to the district court that, at least for determination of the summary judgment motions, it should be assumed that no physical inventory was conducted between 1979 and September of 1982. However, in response to INCO's audit requests in 1980 and 1981, Trammel Crow executed an itemization of nickel which it represented to be a "true and correct statement of all stocks on hand and in transit for the account" of INCO. When the September 1982 discrepancy was discovered, Trammel Crow again sent those 1980 and 1981 statements of "all stocks on hand" to INCO. On November 3 Trammel Crow sent to INCO another statement of the stock on hand, this time with a cover letter saying it was a "certified physical inventory of all stock on hand." This evidence raises the issue whether Trammel Crow misrepresented to INCO that physical inventories were being conducted annually.

INCO's manager stated in his affidavit that the assurance of annual inventories, and Trammel Crow's failure to perform, "accounted for the International Nickel Corporation's inability to detect and remedy the product losses occurring at the Trammel Crow Distribution Corporation's storage facility." The manager further explained that, when discrepancies occurred,

he was told by the Trammel Crow people that the missing nickel was probably only misplaced and would be located in the warehouse in due time. This evidence leaves us with fact issues of INCO's reliance and diligence, and it leaves open INCO's claim that, but for the misrepresentations, it would have removed its nickel earlier and avoided some or all of its losses. If those contentions can be established, Trammel Crow should be estopped from utilizing its limited liability bar, at least to the extent of the loss that INCO would have avoided.

INCO also argues in its reply brief that, aside from any misrepresentation, Trammel Crow cannot rely on the limitation of liability clause because it breached its contractual duty to conduct annual inventories. This may take us to the importance of this contractual obligation and INCO's reliance upon it. We decline to rule on the argument, however, because it was not urged to the district court.

### V.

■ In addition to its attempt to avoid the limitation on liability and recover on the contract, INCO asserts a cause of action under the Texas Deceptive Trade Practices Act (DTPA), Tex.Bus. & Comm.Code Ann. §§ 17.41–.63 (Vernon Supp.1986). The district court held that no cause of action exists under the DTPA because Trammel Crow's conduct amounted only to a breach of contract, INCO waived any right to recover under the DTPA by agreeing to the limitation of liability clause, and INCO failed to comply with the DTPA's notice and pleading requirements. Having decided that the record raises an issue of misrepresentation by Trammel Crow, we disagree with the district court's ruling on the DTPA claim.[1]

It is true that "[a]n allegation of a mere breach of contract, without more, does not constitute a 'false, misleading or deceptive act' in violation of the DTPA." *Ashford Development, Inc. v. USLife Real Estate Services Corp.*, 661 S.W.2d 933, 935 (Tex. 1983). In this case, however, INCO has alleged more than mere breach of contract. It has alleged that Trammel Crow knowingly represented that it was conducting inventories when in fact it was not. This is squarely within the ambit of the DTPA. *See* Tex.Bus. & Comm.Code Ann. § 17.46(b) (Vernon Supp.1986). INCO is entitled to the opportunity to prove that misrepresentations were made and what, if any, damages were caused by such misrepresentations.

■ The district court also concluded that INCO gave up any right to recover under the DTPA by agreeing to the limitation of liability clause. We do not agree. Waiver is the "intentional relinquishment of a known right or intentional conduct inconsistent with claiming it." *United States Fidelity and Guaranty Co. v. Bimco Iron and Metal Corp.*, 464 S.W.2d 353, 357 (Tex.1971). We cannot conclude that by agreeing to a standard clause limiting liability for lost or destroyed nickel, INCO relinquished its rights to sue under the DTPA for intentional misrepresentation. Limitation of liability clauses are strictly construed against the bailee, *see Allright, Inc. v. Elledge*, 515 S.W.2d 266, 268 (Tex. 1974), and in any event cannot protect a warehouseman for liability resulting from conversion, *see* Tex.Bus. & Comm.Code Ann. § 7.204(b) (Vernon 1968). We do not believe that by agreeing to the limitation of liability clause, INCO intentionally gave up its right to sue Trammel Crow for intentional misconduct. Furthermore, Texas

---

1. In addition to the conduct described in the following paragraphs in the text, INCO alleged in its complaint that Trammel Crow's conduct in charging $1,680 in storage fees for nickel that was in fact missing was an "unconscionable action" within the meaning of Tex.Bus. & Comm.Code Ann. § 17.50(a)(3) (Vernon Supp.1986). The district court rejected this claim. INCO does not specifically challenge this ruling on appeal and, in the absence of any evidence that Trammel Crow intentionally charged INCO with knowledge that nickel was in fact irretrievably gone, we agree with the district court's ruling on this point. We further note that Trammel Crow claims, without contradiction from INCO, that it offered to pay INCO the amount of the overcharge prior to this suit being filed.

courts have been quite willing to permit DTPA suits despite the existence of limitation of liability and disclaimer of warranty clauses. *See Metro Ford Truck Sales, Inc. v. Davis*, 709 S.W.2d 785, 789–90 (Tex.App.—Ft. Worth 1986, writ requested); *Martin v. Lou Poliquin Enterprises, Inc.*, 696 S.W.2d 180, 186 (Tex.App.—Houston [14th Dist.] 1985, writ ref'd .n.r.e.); *Reliance Universal, Inc. v. Sparks Industrial Services, Inc.*, 688 S.W.2d 890, 892–93 (Tex. App.—Beaumont 1985, writ ref'd n.r.e.); *North American Van Lines v. Bauerle*, 678 S.W.2d 229, 236 (Tex.App.—Fort Worth 1984, writ ref'd n.r.e.).

■ Finally, the district court held that INCO's DTPA claims are barred because INCO failed to comply with DTPA's notice requirements. Texas Business and Commerce Code Annotated § 17.50A(a) (Vernon Supp.1986) states that, as a prerequisite to suit under the DTPA, the plaintiff must send notice to the defendant setting forth the "specific complaint and the amount of actual damages and expenses, including attorney's fees, if any." The notice must be sent 30 days before the complaint is filed. INCO's only notice to Trammel Crow was sent on January 3, 1983, prior to the third and final discovery that nickel was missing. The notice thus failed to set out the full amount of damages for lost nickel that INCO now claims. The notice also did not specify the exact amount of excess storage charges INCO claimed and did not make any claim as to attorney's fees.

We agree with the district court that this notice was inadequate. Although the DTPA is to be liberally construed to promote its remedial purposes, Tex.Bus & Comm.Code Ann. § 17.44 (Vernon Supp. 1986), and some Texas cases have been willing to find adequate notice in borderline cases, *see, e.g., Williams v. Hills Fitness Center, Inc.*, 705 S.W.2d 189 (Tex.App.—Texarkana 1985, writ ref'd n.r.e.), the notice in this case failed to satisfy the basic purpose of requiring notice in that it did not inform Trammel Crow of the nature of the claim in such a way that Trammel Crow could have made an informed settlement offer. *Cf. Williams*, 705 S.W.2d at 193 ("An underlying purpose of [the notice requirement] is to encourage settlements by affording a potential defendant an opportunity to limit damages and expense by making a settlement offer.").

INCO asserts that the notice was adequate because it set forth INCO's "then-ascertainable amount of actual damages." A similar argument, made in similar circumstances, was squarely rejected by a recent Texas decision. In *Sunshine Datsun, Inc. v. Ramsey*, 680 S.W.2d 652 (Tex.App.—Amarillo 1984, no writ), the plaintiff sent a demand letter shortly before the time she was aware of the exact amount of her damages and attorney's fees. Noting that there was no statute of limitations problem, the court held that she should have sent a second letter once she learned the full extent of the damages she would claim at trial and then waited an additional thirty days. INCO's demand letter suffers from the same defect. Approximately three weeks after it sent its letter and prior to filing its suit, INCO learned that additional nickel was missing and removed the rest of its nickel from the warehouse. At that point, INCO was aware of its total damages and that this total was more than what was claimed in its demand letter. There is no reason why INCO could not have sent a second demand letter fully complying with the statute.

■ Although we agree with the district court that INCO's demand letter was inadequate, we conclude that the proper remedy is not dismissal of the DTPA claims but abatement of the suit until the notice requirement is satisfied. This procedure, although not specified in the statute, has been adopted by the Texas courts. *See Sunshine Datsun*, 680 S.W.2d at 655; *Hollingsworth Roofing Co. v. Morrison*, 668 S.W.2d 872, 875 (Tex.App.—Fort Worth 1984, no writ). If INCO wishes to pursue its DTPA claims on remand, the district court should abate the proceedings until INCO has given the notice required by the statute.

## VI.

In its final two arguments, INCO asserts that the district court erred in not awarding its attorney's fees under Texas Civil Practice and Remedies Code Annotated § 38.001 (Vernon 1986), and in not awarding its prejudgment interest. In light of our remand of this case, these issues will remain open pending the district court's ultimate disposition of the case.

■ If INCO prevails on its claims for damages beyond the amount originally claimed, it will have a strong claim for attorney's fees. We note, however, that INCO is not necessarily precluded from recovering its attorney's fees even if the issues on remand are resolved against it. The rule in Texas appears to be that an award of attorney's fees under section 38.-001 is mandatory upon a showing that all the requirements of the section are met. *See Estes v. Wilson*, 682 S.W.2d 711, 718 (Tex.App.—Ft. Worth 1984, writ ref'd n.r. e.); *Karol v. Presidio Enterprises, Inc.*, 622 S.W.2d 638, 640 n. 1 (Tex.App.—Austin 1981, no writ); *Okon v. Levy*, 612 S.W.2d 938, 943 (Tex.Civ.App.—Dallas 1981, writ ref'd n.r.e.). While the plaintiff has the burden of proving that a proper demand for payment was made and that the defendant failed to tender payment of the "just amount owed" within thirty days of the demand, *Ellis v. Waldrop*, 656 S.W.2d 902, 905 (Tex.1983), the fact that the demand was for a greater amount than ultimately recovered does not mandate the denial of attorney's fees. *Denta Rama, Inc. v. Lavastone Industries*, 597 S.W.2d 507, 510 (Tex.Civ.App.—Dallas 1980, no writ) (excessive demand did not preclude award of

attorney's fees when demand was made in good faith).[2]

As to prejudgment interest, INCO is entitled to prejudgment interest from the date its damages became fixed, except to the extent that Trammel Crow prevented the accrual of interest by a valid tender of the amount due. *See J.M. Hollis Construction Co. v. Paul Durham Co.*, 641 S.W.2d 354, 357–58 (Tex.App.1982—Corpus Christi). A critical issue on remand—as to both attorney's fees and prejudgment interest—is when, if at all, Trammel Crow made a valid tender.[3]

The judgment is REVERSED and the case is REMANDED.

---

**2.** Trammel Crow asserts that INCO is precluded from recovering its attorney's fees because it rejected a Rule 68 offer of judgment for $14,-000 and ultimately recovered less than the offer of judgment. *See* Fed.R.Civ.P. 68. In light of the dispute over prejudgment interest, there is some question whether INCO can be said to have recovered less than the offer of judgment. In any event, however, Rule 68 serves only to prevent the plaintiff from recovering costs that would normally be his under Federal Rule of Civil Procedure 54(d). Trammel Crow's reliance on *Marek v. Chesny*, 473 U.S. 1, 105 S.Ct. 3012,

87 L.Ed.2d 1 (1985) is misplaced because the underlying statute here awards attorney's fees "in addition" to costs rather than "as a part of costs."

**3.** INCO asserts that the tender was made on May 1, 1985, when Trammel Crow made its Rule 68 offer of judgment. Trammel Crow asserts that it offered to pay the amount due under the limitation of liability clause plus the excess storage fees even before suit was filed. The only evidence in the record is of the May 1, 1985 tender.