malott 



IN THE COURT OF APPEALS, THIRD DISTRICT OF TEXAS,



AT AUSTIN




 





NO. 3-93-207-CV





AMERICAN TRANSFER AND STORAGE COMPANY,



 
 APPELLANT


vs.





MARY MALOTT,



 APPELLEE



 




FROM THE DISTRICT COURT OF TRAVIS COUNTY, 200TH JUDICIAL DISTRICT



NO. 92-01439, HONORABLE JOSEPH H. HART, JUDGE PRESIDING



 





 Mary Malott, appellee, sued American Transfer and Storage Company
("American"), appellant, on several legal theories, including violations of the Texas Deceptive
Trade Practices-Consumer Protection Act ("DTPA"), Tex. Bus. & Com. Code Ann. §§ 17.41-.63
(West 1987 & Supp. 1994). In its verdict, the jury found that American had violated the DTPA,
but also found that Malott had agreed to limit American's liability. The trial court disregarded
the limitation-of-liability finding and rendered judgment for Malott. We will modify and affirm
the judgment.


FACTUAL AND PROCEDURAL BACKGROUND


 In 1983 Malott, an artist, stored four pieces of mixed-media construction
artworktwo large pieces and two smaller piecesat American's warehouse facilities in Austin. 
The art had been previously stored free of charge with a corporation owned in part by Malott's
accountant, John Fairey. Malott testified that she moved the artwork from the corporation to
American's warehouse in part because she desired a safer and more secure facility. According
to Malott and Fairey, American represented that its warehouse was suitable for her artwork, that
the art would be safe and secure, and that the art would be placed up high on racks and not moved
around.

 When American picked up the artwork, Malott was required to sign an "Order for
Service" containing the following:





DECLARED VALUE AND INSURANCE LIABILITY


I hereby declare the value of this shipment to be not in excess of
sixty cents (60¢) per pound per article[.] This is to qualify for the
lowest rates established by the Texas Household Goods Tariff.


I declare that the actual cash value of this shipment to be
$20,000.00; and I request American to procure insurance protection
for me while this shipment is being transported and/or in storage on
this property at the rate of $.15/100


I do not desire insurance on this shipment.

























The $20,000 figure apparently was supplied by Malott. Neither of the boxes above was checked.

 After the artwork had been stored, American sent monthly invoices to Malott's
accountant, Fairey. In addition to a "storage" charge of $20, each invoice included a "valuation"
charge of $30 that was used to purchase an insurance policy covering the stored items. Fairey,
on receipt of the first invoice, refused to pay the valuation charge. He informed American that
Malott did not want valuation insurance and that he would not pay for it. Fairey independently
obtained insurance on the artwork through another company, apparently for a lesser amount than
American's valuation charge. This insurance policy was kept in force for several years, after
which it was not renewed.

 Approximately nine years after the items were stored with American, Fairey, on
Malott's behalf, asked to inspect the artwork. American could not locate the two larger pieces. 
Fairey tendered a claim of approximately $30,000; American rejected Fairey's claim, and instead
offered $774.00, based on a valuation of sixty cents per pound.

 Malott brought suit against American, asserting claims of conversion, breach of
contract, negligence, gross negligence, and violations of the DTPA. American counter-sued for
negligent misrepresentation and asserted defenses of statutory and contractual limitation of
damages, accord and satisfaction, novation, estoppel, waiver, quasi-estoppel, comparative
negligence, lack of consideration, and misrepresentation as an inducement to enter into and
continue the business relationship. A jury found that American was negligent and that it had
violated the DTPA, but also found that Malott had agreed to limit her damages to sixty cents per
pound. The trial court disregarded the jury's finding that Malott had limited her damages, finding
that such a limitation violated section 17.42 of the DTPA. Judgment was rendered for Malott for
$10,230.78 in actual damages, $1,054.13 prejudgment interest, $2,000 DTPA "additional"
damages, $40,366.00 in attorney's fees, and $3,577.16 in costs.

 On appeal, American complains that the trial court erred in (1) disregarding the
limitation-of-liability finding; (2) refusing to submit several requested questions and instructions;
(3) using an improper measure of damages; (4) calculating prejudgment interest on an incorrect
accrual date; and (5) awarding attorney's fees.


DISCUSSION



1. Misrepresentation

 In its second point of error, American asserts that the trial court erred in refusing
to submit its tendered jury questions regarding its counter-claim and defense of misrepresentation. (1) 
American contends that when Fairey refused to pay the valuation charge, he effectively made "a
declaration and agreement that Malott's items were worth sixty cents ($.60) per pound." 
American further asserts that "the actionable and false representation was that [Malott] was willing
to declare and `agree' to a stated value in exchange for the lowest available charges."

 Rule 278 of the Texas Rules of Civil Procedure provides:


[t]he court shall submit the questions, instructions and definitions . . . which are
raised by the written pleadings and the evidence. . . . Failure to submit a question
shall not be deemed a ground for reversal of the judgment, unless its submission,
in substantially correct wording, has been requested in writing and tendered by the
party complaining of the judgment.


Tex. R. Civ. P. 278. American's counterclaim (and defense) of misrepresentation was not raised
by the evidence. Although Fairey testified that he had a discussion regarding insurance and
valuation with American, neither Fairey nor any other witness testified as to the specifics of the
discussion. There is no evidence that Fairey made any representations regarding the actual value
of the artwork; instead, the testimony shows that Fairey simply refused to pay for the insurance
American procured and refused to pay any additional "valuation" charge.

 Further, there is no evidence that American was damaged by any misrepresentation
regarding valuation. American seems to claim that if Fairey had not "misrepresented" the value
of the artwork, it would not now be liable to Malott for the actual value of her art. Accordingly,
American's proposed question defined its damages as equal to the difference between the actual
market value of the artwork and the value as represented. The jury, however, found American
liable for violations of the DTPA and awarded damages on that basis. American's DTPA liability
was separate from and independent of the storage contract. (2) American's second point of error is
overruled.



2. Jury Charge

 In its fourth, fifth, and sixth points of error, American asserts that the trial court
erred in refusing various instructions and alternative submissions of the DTPA questions. Point
of error six asserts that the trial court erred in overruling its objection to jury question one and
refusing American's alternative question one because there was no evidence to support the
submission of a violation of DTPA § 17.46(b)(21). (3)
 In particular, American objected that
subsection (c) of the question, defining "[r]epresenting that services have been performed on
goods when services were not performed" as a "[f]alse, misleading, or deceptive act or practice,"
was not applicable under the facts of the case.

 American argues that "[t]he only services acquired by [Malott] was the storage of
constructions in an allegedly safe, temperature sensitive, and rodent free facility," and thus Malott
"requested no services be performed `on' the items" and "[American] never represented that work
or services had been performed `on' the constructions when the work or services were not
performed." American asserts that DTPA § 17.46(b)(21) was enacted "to prevent unscrupulous
repair shops from taking advantage of . . . lack of consumer knowledge" and that the DTPA
"requires some services be performed `on', meaning `to' the goods." American argues that,
because services were neither requested nor performed "on" or "to" the artwork, it cannot be
liable under § 17.46(b)(21) of the DTPA. We disagree.

 The DTPA is to be "liberally construed and applied to promote its underlying
purposes, which are to protect consumers against false, misleading, and deceptive business
practices." DTPA § 17.44. In construing the DTPA, we are not confined to the literal meaning
of the words used therein. Pennington v. Singleton, 606 S.W.2d 682, 686 (Tex. 1980); Woods
v. Littleton, 554 S.W.2d 662, 665 (Tex. 1977). The Legislature's intent rather than the strict
letter of the act will control. Pennington, 606 S.W.2d at 686; Woods, 554 S.W.2d at 665.

 We believe American's construction of section 17.46(b)(21) is unduly restrictive. 
See Commercial Escrow Co. v. Rockport Rebel, Inc., 778 S.W.2d 532, 536-38 (Tex.
App.Corpus Christi 1989, writ denied). Malott presented evidence that American was requested
to store the artwork, that American billed Malott for storage until May 1991, that the artwork had
not been seen since February 1987, and that American did not keep complete documentation on
the artwork and did not store the artwork on racks. We conclude that there was some evidence
to support the submission of question one to the jury. Accordingly, we overrule American's sixth
point of error. Because the jury's answer to question one will support the judgment, we need not
address American's fourth and fifth points of error, which challenge other jury questions relating
to different grounds of liability under the DTPA.



3. Limitation of Liability

 In its first point of error, American asserts that the trial court erred in failing to
limit Malott's damages to sixty cents per pound. American contends that when Fairey refused to
pay the added "valuation" charge, he effectively altered the contract so that the declared value of
the goods, and American's maximum liability, was sixty cents per pound. American argues that
this limitation applied to all of Malott's causes of action, including DTPA laundry list and
unconscionability violations.

 Section 7.204 of the Texas Business and Commerce Code provides that a
warehouseman is liable for damages to goods caused by his failure to use ordinary care. Tex.
Bus. & Com. Code Ann. § 7.204(a) (West 1991). The warehouseman may limit his damages,
however,


by a term in the warehouse receipt or storage agreement limiting the amount of
liability in case of loss or damage, and setting forth a specific liability per article
or item, or value per unit of weight, beyond which the warehouseman shall not be
liable; . . . . No such limitation is effective with respect to the warehouseman's
liability for conversion to his own use.


Tex. Bus. & Com. Code Ann. § 7.204(b). In other words, warehousemen may, in certain
circumstances, contractually limit their liability.

 The DTPA provides as a general rule that any waiver by a consumer of its
provisions is contrary to public policy and unenforceable. DTPA § 17.42(a). There are,
however, exceptions to this rule. A waiver will be enforced where the defendant pleads and
proves that the consumer is not in a significantly disparate bargaining position, the consumer is
represented by legal counsel in seeking or acquiring the services, and the consumer waives the
claims by an express provision in a written contract signed by both the consumer and the
consumer's legal counsel. DTPA § 17.42(a). A limitation of liability may also be valid for a
breach of warranty claim brought under the DTPA. Southwestern Bell Tel. Co. v. FDP Corp.,
811 S.W.2d 572, 573 (Tex. 1991) (holding that a limitation clause "was part of the warranty upon
which the buyer's claim is based and it therefore limits his recovery" under the DTPA for breach
of warranty).

 These exceptions do not apply in this case. First, American does not contend that
it met the statutory criteria for waiver. Second, Malott's DTPA claim was not solely for breach
of warranty; instead, Malott obtained jury findings that American violated several DTPA "laundry
list" provisions as well as the DTPA unconscionability provisions. A contractual limitation of
liability clause that does not meet the DTPA's waiver requirements does not waive a consumer's
right to sue or limit the damages he may receive for specific "laundry list" or unconscionability
violations. First Title Co. of Waco v. Garrett, 860 S.W.2d 74, 77-78 (Tex. 1993); FDP Corp.,
811 S.W.2d at 576.

 American argues that section 7.204 of the Texas Business and Commerce Code is
a statutory limitation of damages and preempts section 7.42 of the DTPA. We do not agree. 
Damages in a DTPA action may be statutorily limited where a tariff, with specific rate structures
and limitations of liability, has been set by a regulatory agency. See Southwestern Bell Tel. Co.
v. Vollmer, 805 S.W.2d 825, 830 (Tex. App.Corpus Christi 1991, writ denied). Unlike a
statutory limitation of damages, section 7.204 authorizes a warehouseman to contractually limit
his liability for damages, but does not automatically impose such a limitation. Moreover, section
7.204 does not conflict with the DTPA. Section 7.204 authorizes a warehouseman to limit his
liability for damages for failure to use ordinary care. It does not authorize a warehouseman to
limit his liability for damages for misrepresentations or unconscionable conduct. International
Nickel Co. v. Trammel Crow Distrib. Corp., 803 F.2d 150, 155-56 (5th Cir. 1986).

 American also argues that a limitation of damages is the same type of defense as
mitigation of damages and therefore should be a good defense against a DTPA claim. We
disagree. Mitigation of damages refers to the duty of an injured party to exercise reasonable care
to minimize his losses. See Walker v. Salt Flat Water Co., 96 S.W.2d 231, 232 (Tex. 1936). It
is a factor in calculating the "actual damages" a party has suffered. Pinson v. Red Arrow Freight
Lines, Inc., 801 S.W.2d 14, 15 (Tex. App.Austin 1990, no writ). A limitation of damages,
unlike mitigation, is a cap on the amount of actual damages a party may recover. The DTPA
explicitly forbids limitations on liability except in certain circumstances not applicable here. 
DTPA § 17.42; FDP Corp., 811 S.W.2d at 576.

 Finally, American argues that its contractual limitation of damages should be
enforced for public policy reasons. American argues that the moving and storage business is
unique in that the consumer is able to control the value to be placed on the goods in order to
obtain a lower price for storage or moving services. American urges that if the limitation of
damages clause does not cover DTPA "laundry list" and unconscionability actions, "then moving
and storage services will quickly become unaffordable to a large segment of the population." 
American also argues that invalidating the limitation for DTPA damages would result in no
available limitation "because every case of loss or damage in Texas will state some type of prima
facie DTPA claim." Thus, American concludes that not enforcing the limitation would allow
consumers to "defraud" the industry and that consumers would never be bound by their own
agreements.

 We reject these policy arguments. The DTPA was enacted "to protect consumers
against false, misleading, and deceptive business practices." DTPA § 17.44. We believe this
policy to be controlling here. American's first point of error is overruled.



4. Damages

 In its third point of error, American asserts that the trial court allowed Malott a
double recovery. The trial court's judgment awarded Malott $10,230.78 as actual damages,
consisting of $7,000 as the fair market value of her lost artwork and $3,230.78 as Malott's out-of-pocket cost of warehousing the artwork. (4)
 American asserts that the market value of the artwork
and the cost of warehousing are mutually exclusive measures of actual damages and that Malott
must elect between them.

 The DTPA permits a plaintiff to recover as actual damages the greater of "out of
pocket" damages or "benefit of the bargain" damages. Leyendecker & Assocs., Inc. v. Wechter,
683 S.W.2d 369, 373 (Tex. 1984). Out-of-pocket damages represent "the difference between the
value of that which [the plaintiff] has parted with, and the value of that which [the plaintiff] has
received." Id. (quoting George v. Hesse, 93 S.W. 107 (Tex. 1906)). The benefit-of-the- bargain
measure "allows the plaintiff to recover the difference between the value as represented and the
actual value received." Leyendecker, 683 S.W.2d at 373 (citing Johnson v. Willis, 596 S.W.2d
256, 262 (Tex. Civ. App.Waco), writ ref'd n.r.e. per curiam, 603 S.W.2d 828 (Tex. 1980)).

 American characterizes the award of the cost of warehousing as "restitution," and
argues that recovery may not be had for both restitution and actual damages. LSR Joint Venture
No. 2 v. Callewart, 837 S.W.2d 693, 702 (Tex. App.Dallas 1992, writ denied); Kargar v.
Sorrentino, 788 S.W.2d 189, 191 (Tex. App.Houston [14th Dist.] 1990, no writ); David
McDavid Pontiac, Inc. v. Nix, 681 S.W.2d 831, 835 (Tex. App.Dallas 1984, writ ref'd n.r.e.). 
We disagree with American's characterization of the award for cost of warehousing.

 Malott is entitled to recover the difference between the value of what she parted
with and the value of what she received. Malott "parted" with her artwork and a monthly storage
fee. Malott's artwork was not returned to her and American provided storage services that were
not as represented. Therefore, Malott was entitled to the fair market value of her artwork and the
difference between the storage fee she paid and the value of the storage services she received.

 American argues that, because two of the pieces of artwork were returned, Malott
received storage services equal to the amount she paid. Apparently, the minimum charges for
storage were such that the cost of warehousing would have been the same for storage of the two
returned pieces. American thus asserts that Malott is not entitled to any of the cost of
warehousing. We do not agree. Fairey testified that Malott would not have stored any items with
American but for the fact that the two lost pieces would not fit in her art storage room in her
house. We overrule American's third point of error.



5. Prejudgment Interest

 In its seventh point of error, American asserts that the trial court miscalculated the
prejudgment interest by using an erroneous accrual date. Texas law provides that


[j]udgments in . . . property damage cases must include prejudgment interest. . . .
[P]rejudgment interest accrues on the amount of the judgment during the period
beginning on the 180th day after the date the defendant receives written notice of
a claim or on the day the suit is filed, whichever occurs first, and ending on the
day preceding the date judgment is rendered.


Tex. Rev. Civ. Stat. Ann. art. 5069-1.05(6)(a) (West Supp. 1994). American introduced into
evidence a written claim form prepared by Fairey and dated May 10, 1991. Fairey testified that
American sent him the claim form and that he filled it out. However, Fairey never testified that
he sent the claim form to American. Similarly, a subsequent letter from American to Malott
acknowledges receipt of the claim form, but does not show when the form was received. 
American's letter is dated several months after the date on the claim form.

 Malott introduced a DTPA demand letter sent to American dated June 25, 1991. 
A "green card" return receipt was attached, showing that American received the letter on June 26,
1991. The letter, like the claim form, gives American notice of Malott's claims.

 After trial, Malott filed a supplemental motion for judgment, to which she attached
a copy of the return receipt "green card" relating to the mailing of the May 10, 1991, claim form. 
This document, however, was not admitted into evidence at trial; therefore, it is not properly a
part of the appellate record and may not be considered. Accordingly, we believe that the trial
court erred in using the May 10 claim form to calculate prejudgment interest, because there is no
evidence showing when American received the form. We conclude that prejudgment interest
should accrue on December 23, 1991, the 180th day after American received Malott's DTPA
demand letter on June 26, 1991. Accordingly, we modify the judgment to award Malott
prejudgment interest on her actual damages of $10,230.78 less American's settlement offer of
$774.00, (5) from December 23, 1991, to December 28, 1992, the day before the judgment was
signed.



6. Attorney's Fees

 In its eighth point of error, American asserts that the trial court erred in awarding
attorney's fees, because there is no evidence to support an award of paraprofessional time. 
Malott's attorney testified that $32,866 was a reasonable and necessary attorney's fee through the
trial of this case. Law-firm billing records, including details of billed and unbilled time spent on
the case and expenses incurred in the case, were introduced into evidence. Included in the billing
records were references to a paralegal's time spent on the case. American contends that "given
the evidence it is impossible to determine what was actually billed or written off." Since the
paralegal's time appears in the billing records, and because the proof needed to recover the fees
for the paralegal's time apparently was not made, American contends that the entire award of
attorney's fees must be denied. We do not agree.

 The record does not reflect that any award of fees for paralegal time was awarded. 
Malott's attorney testified to an amount of reasonable attorney's fees. The charge asked the jury
what amount was reasonable for the necessary services of Malott's attorneys in the case. The
judgment awards attorney's fees. We will not deny Malott's attorney's fees because the record
also contains evidence of other fees and expenses incurred by Malott. American's eighth point
of error is overruled.


CONCLUSION


 We modify the judgment to award Malott prejudgment interest on her actual
damages of $10,230.78 less American's settlement offer of $774.00, from December 23, 1991,
to December 28, 1992, the day before the judgment was signed. As modified, the judgment of
the trial court is affirmed.



 J. Woodfin Jones, Justice

Before Justices Powers, Jones and Kidd

Modified and, as Modified, Affirmed

Filed: March 9, 1994

Do Not Publish
1. American tendered the following questions:

 Did Mary Malott make a negligent misrepresentation on which
American Transfer and Storage Company justifiably relied?

 In answering this question, you are instructed as follows:

 Negligent misrepresentation occurs when:

 a. A party makes a representation in the course of business or in
a transaction in which he or his principal has a pecuniary
interest;

 b. The representation supplies false information for the guidance
of others in their business; and

 c. The party making the representation did not exercise
reasonable care or competence in obtaining or communicating
the information.

Answer "Yes" or "No".

 Answer:__________


 What sum of money, if any, if paid now in cash, would fairly and
reasonably compensate American Transfer and Storage Company for
damages, if any, that were proximately caused by the negligent
misrepresentation?

 In answering this question, you are instructed as follows:

 Consider the following elements of damages, if any, and none other.

 The difference, if any, between the actual market value of Plaintiff's
missing items and the value as represented by Plaintiff to obtain the services
of American Transfer and Storage Company.

 Do not add any amount for interest on past damages, if any.

 Answer an amount in dollars and cents, if any:

Answer: $____________
2. Moreover, even if an insurance policy covering the artwork had been in force, either
through payment of the "valuation charge" or purchased independently, any proceeds
from such a policy would not have relieved American of liability. See Brown v. American
Transfer & Storage Co., 601 S.W.2d 931, 934-36 (Tex. 1980).
3. The following was submitted to the jury as Question No. 1:


 Did American Transfer and Storage Company engage in any false,
misleading, or deceptive act or practice that was a producing cause of
damages to Mary Malott?

 In answering this question, you are instructed as follows:

 "False, misleading, or deceptive act or practice" means, but is not
limited to, any of the following:

 (a) Representing that services are or will be of a particular
standard, quality, or grade if they were of another, or

 (b) Representing that services had or would have
characteristics, uses, or benefits that they did not have,
or

 (c) Representing that services have been performed on
goods when services were not performed, or

 (d) Failing to disclose information about services that was
known at the time of the transaction with the intention
to induce Mary Malott into a transaction.

Answer "Yes" or "No".

__________

4. The following question was submitted to the jury as Question No. 8:


 What sum of money, if any, if paid now in cash, would fairly and
reasonably compensate Mary Malott for her damages, if any that resulted
from the conduct of American Transfer and Storage Company inquired
about in Questions No. 1, 2, 3, 4 or 6?

 In answering this question, you are instructed as follows:

 Consider the following elements of damages, if any, and none other. 
Consider each element separately. Do not include damages for one element
in any other element. Do not include interest on any amount of damages
you find.

 "Market Value" means the amount that would be paid in cash by a
willing buyer who desires to buy, but is not required to buy, to a willing
seller who desires to sell, but is under no necessity of selling.

 Answer in dollars and cents, if any:

 Cost of Warehousing: $3,230.78

 Market Value of each piece of art in Travis County, Texas on April 19,
1991:

 Death Shrine: $3,000

 Wedding Shrine: $4,000

5. Tex. Rev. Civ. Stat. Ann. art. 5069-1.05(6)(c) (West Supp. 1994) provides:


If judgment for a claimant is more than the amount of the settlement offer
by the defendant, prejudgment interest does not include prejudgment
interest on the amount of the settlement offer for the period during which
the offer may be accepted.