**Clayton E. MOREN, Appellant,**

v.

**Alfred D. PRUSKE, Appellee.**

**No. 15957.**

Court of Civil Appeals of Texas, San Antonio.

July 31, 1978.

Rehearing Denied Sept. 20, 1978.

Thomas Goggan, Goggan & Cain, Austin, Kenneth Leeds, San Antonio, for appellant.

Richard E. Langlois, R. Emmett Cater, San Antonio, for appellee.

## OPINION

MURRAY, Justice.

Defendant below appeals from a judgment rendered after a trial before a jury, and we will designate the parties as they appeared in the trial court. Plaintiff, as lessor, and defendant, as lessee, entered into a written lease agreement concerning certain warehouse space in Bexar County, Texas. The lease, which was for an initial two-year period, was executed on July 6, 1971, and defendant exercised his additional two-year option, and finally surrendered the premises on or about June 30, 1975. Plaintiff alleged that defendant, at the expiration of the lease term, delivered the premises to plaintiff in a damaged condition and that the reasonable cost of repair of such premises was the sum of $26,430. Plaintiff seeks additional damages for lost rentals due to the condition of the premises. The defendant denied that the plaintiff had suffered any damages and, further, that any issue in this suit has or should have been litigated in a prior suit between the same parties.

At the close of the evidence, the court submitted, among others, the following questions, and the jury made the following answers:

ISSUE NO. 2

Do you find from a preponderance of the evidence that plaintiff suffered financial loss as a result of the condition of the premises when they were delivered?

Answer "We do" or "We do not".

Answer: We do

ISSUE NO. 3

What amount of financial loss did Plaintiff, Pruske, suffer as a result thereof?

Answer in dollars and cents, if any.

Answer: $17,500.00

ISSUE NO. 4

Do you find from a preponderance of the evidence that such condition rendered the premises unsuitable for occupancy by other prospective tenants immediately after Defendant Moren vacated them?

Answer "We do" or "We do not".

Answer: We do

ISSUE NO. 5

Do you find from a preponderance of the evidence that Plaintiff, Alfred D. Pruske, used due diligence in attempting to lease the premises immediately after Defendant, Clayton E. Moren, vacated them?

Answer "We do" or "We do not".

Answer: We do

ISSUE NO. 6

What amount of financial loss did Plaintiff Pruske suffer as a result of being unable to lease the premises immediately after they were vacated by Defendant, Clayton E. Moren?

Answer in dollars and cents, if any.

Answer: $2400.00

This case was tried to a jury in May of 1977 and therefore a motion for new trial was a prerequisite to appeal. Tex.R.Civ.P. 324 (1977). Proper assignments of error in the motion for new trial are necessary conditions to the right to complain on appeal. *Wagner v. Foster,* 161 Tex. 333, 341 S.W.2d 887 (1960); *Sumners Road Boring, Inc. v. Thompson,* 393 S.W.2d 690 (Tex.Civ.App.— Corpus Christi 1965, writ ref'd n. r. e.).

We have carefully examined defendant's amended motion for new trial and defendant's ten points of error as set out in his brief and find that only Point of Error No. IV is supported by a point in his amended motion for new trial. Defendant's Point of Error No. IV states:

THE TRIAL COURT ERRED IN ENTERING JUDGMENT UPON SPECIAL ISSUE NO. THREE AND THE FINDING THEREON AND IN OVERRULING THE AMENDED MOTION FOR NEW TRIAL, BECAUSE THERE IS INSUFFICIENT EVIDENCE TO SUPPORT SUCH FINDING, AND SUCH FINDING IS SO CONTRARY TO THE GREAT WEIGHT AND PREPONDERANCE OF THE EVIDENCE AS TO BE MANIFESTLY UNJUST.

Paragraph II. of defendant's Amended Motion for New Trial states:

The Court erred in failing to set aside the jury demand for damages as set forth and provided in Vernon's Annotated Rules of Civil Procedure, Rule *328,* such award being grossly and manifestly excessive when compared to the weight and sufficiency of evidence. That such award was insufficiently supported by the finding and was so against the overwhelming weight and preponderance of evidence as to be manifestly wrong.

We overrule this point of error. The testimony in this case lasted over a period of seven days. Most of this testimony pertained to the nature and extent of the damages, the type of repairs required, the estimated costs of repairs, and the actual cost of repairs. We agree with defendant's counsel in this statement:

The record in this case consists of seven separate bound volumes of testimony and 159 exhibits. The great bulk of the record is concerned, in excruciating detail, with the nature and extent of claimed damages and repairs thereto.

■ The proper measure of damages where the injury to realty is repairable is the reasonable cost of repairs necessary to restore the property to its prior condition. *Pasadena State Bank v. Isaac,* 149 Tex. 47,

228 S.W.2d 127 (1950); *Weaver Construction Co. v. Rapier,* 448 S.W.2d 702 (Tex.Civ. App.—Dallas 1969, no writ). It is defendant's position that the word "reasonable" must appear in the testimony of an expert witness and it is apparent from the record that this word was not used. We agree with plaintiff that reasonableness can be inferred from the evidence. *Lynch v. Ricketts,* 158 Tex. 487, 314 S.W.2d 273 (1958); *Ice Service Company v. Scruggs,* 284 S.W.2d 185 (Tex.Civ.App.—Fort Worth 1955, writ ref'd n. r. e.); 23 Tex.Jur.2d *Evidence* § 65 (1961). In *Lynch,* the Supreme Court said, at page 276:

The jury is thus not only the judge of the facts and circumstances proven but may also draw reasonable inferences and deductions from the evidence adduced before it. Its findings may not be disregarded under the provisions of Rule 301, therefore, if the record discloses any evidence of probative value which, with inferences that may be properly drawn therefrom, will reasonably support the same.

Mr. Victor Oehler, called as a witness by plaintiff, testified that he was in the building and construction business for 16 years and was a tenant in the same building involved in this suit and had inspected damage to the building and submitted a bid in the amount of $26,430 to the plaintiff and that said amount was strictly for the repair that was required to put the building back in shape as it was. He further testified that he was familiar with the price of the materials and with the price of labor in the San Antonio area, and that he now felt that his bid was actually too low for him to cover his costs to make the repairs.

■ Mr. E. W. Carlson was called as a witness by plaintiff and testified that he was an estimator for a construction company and had 30 years of experience; that he had submitted a proposal in the sum of $23,410 and that his estimate was submitted as a complete bid in the expectation that the company he worked for would have the opportunity to make repairs to plaintiff's warehouse. When this witness was asked if

estimates of this type varied from estimator to estimator, he gave the following testimony:

A  Well, we all see things differently, yes.

Q  In your opinion, how much variation would you expect in a proposal of this character?

A  Well, any honest bidding there can be a certain percentage variance of your bids. That's how you come up low on them. You see you can do it more efficiently than the other person.

And, as a rule, there shouldn't be more than a maximum of 5 per cent difference, would be logical.

We hold that under the evidence in this case the jury could infer the reasonableness of the cost of repair and that the evidence is sufficient to support the answer to Issue No. 3.

The judgment of the trial court is affirmed.