ACCEPTED
01-14-00779-cv
FIRST COURT OF APPEALS
HOUSTON, TEXAS
3/25/2015 12:17:14 PM
CHRISTOPHER PRINE
CLERK

## NO. 01-14-00779-CV

In the Court of Appeals
First Judicial District of Texas
Houston, Texas

FILED IN
1st COURT OF APPEALS
HOUSTON, TEXAS

3/25/2015 12:17:14 PM

CHRISTOPHER A. PRINE
Clerk

―――――――――――――――――――――――――――――――――――――――――

## POINTE WEST CENTER, LLC
*Appellant,*

*vs.*

## IT'S ALIVE, INC. AND SHAMIL QURESHI
*Appellees/Cross-Appellants,*

―――――――――――――――――――――――――――――――――――――――――

Appeal from County Civil Court at Law No. 1
Harris County, Texas
Cause No. 1022800

―――――――――――――――――――――――――――――――――――――――――

## BRIEF OF CROSS-APPELLANTS IT'S ALIVE, INC. AND SHAMIL QURESHI

―――――――――――――――――――――――――――――――――――――――――

James A. Dunn
Texas Bar No. 06244800
3006 Brazos Street
Houston, Texas 77006
Tel.: (713) 403-7405
Fax: (713) 230-8940
Email: jdunn@dnglegal.com
Attorney for Cross-Appellants
IT'S ALIVE, INC. AND
SHAMIL QURESHI

ORAL ARGUMENT REQUESTED

# IDENTITIES OF PARTIES AND COUNSEL

Appellant/Plaintiff in Trial Court
POINTE WEST CENTER, LLC.

Spencer E. Dunn
Texas Bar No. 00797848
The Law Office of Spencer E. Dunn
4669 Southwest Freeway, Suite 760
Houston, Texas 77027
Telephone: (713) 589-4920
Facsimile: (713-344-0867
Email: spenceredunn@aol.com
COUNSEL FOR APPELLANT
POINTE WEST CENTER, LLC
DURING TRIAL AND ON APPEAL

Appellees/Cross-Appellants/Defendants in Trial Court
IT'S ALIVE, INC.,
SHAMIL QURESHI

James A. Dunn
Texas Bar No. 06244800
Dunn Neal & Gerger, L.L.P.
3006 Brazos Street
Houston, Texas 77006
Telephone: 713.403.7405
Facsimile: 713.960.0204
Email: jdunn@dnglegal.com
COUNSEL FOR APPELLEES/CROSS-APPELLANTS
IT'S ALIVE, INC. AND SHAMIL QURESHI
DURING TRIAL AND ON APPEAL

# TABLE OF CONTENTS

IDENTITIES OF PARTIES AND COUNSEL…………………………………….ii

INDEX OF AUTHORITIES……………………………………………….......iv

STATEMENT OF THE CASE…………………………………………….....2

STATEMENT REGARDING ORAL ARGUMENT…………………………...2

ISSUES PRESENTED FOR REVIEW………………………………….…3

Cross-Appeal Issue No. 1. The Trial Court erred in denying Cross-Appellants' motion for instructed verdict because there was no evidence to support the submission of the issue on reasonable cost to repair the premises.

Cross-Appeal Issue No. 2. There is no evidence to support the jury's answer to Question No. 5(A) regarding the reasonable cost to repair the premises.

Cross-Appeal Issue No. 3. The Trial Court erred in rendering Judgment awarding any damages to Pointe West Center, LLC because there was no legally sufficient evidence to support the damages award.

STATEMENT OF FACTS……………………………………….…………..4

SUMMARY OF THE ARGUMENT…………………………………....…9

ARGUMENT AND AUTHORITIES……………………………....………10

Cross-Appeal Issue No. 1. The Trial Court erred in denying Cross-Appellants' motion for instructed verdict because there was no evidence to support the submission of the issue on reasonable cost to repair the premises……………10

Cross-Appeal Issue No. 2 There is no evidence to support the jury's answer to Question No. 5(A) regarding the reasonable cost to repair the premises.……...18

Cross-Appeal Issue No. 3. The Trial Court erred in rendering Judgment awarding any damages to Pointe West Center, LLC because there was no legally sufficient evidence to support the damages award for reasonable costs of repair……………………………………….…………………….…………23

PRAYER…………………………………………………………….…27

CERTIFICATE OF COMPLIANCE…………………………………...….…28

CERTIFICATE OF SERVICE………………………………….………...29

APPENDIX…………………………………………………………….…30

# INDEX OF AUTHORITIES

*Allright, Inc. v. Lowe*, 500 S.W.2d 190 (Tex. Civ. App.—Houston [14th Dist.] 1973) ........................................................................................................... 27

*Bradley v. Castro*, 591 S.W.2d 304 (Tex. Civ. App.—Fort Worth 1979) ............ 19

*Burbage v. Burbage*, 447 S.W.3d 249 (Tex. 2014) ............................................... 11

*City of Keller v. Wilson*, 168 S.W.3d 802 (Tex. 2005) ......................................... 10

*Dallas Railway & Terminal Co. v. Gossett*, 156 Tex. 252, 294 S.W.2d 377

(1956) ..................................................................................................................... 27

*Ebby Halliday Real Estate v. Murnan*, 916 S.W.2d 585 (Tex. App.—Fort Worth 1996, writ denied) ................................................................................................. 11

*Fort Worth Hotel Ltd. Pshp. v. Enserch Corp.*, 977 S.W.2d 746 (Tex. App.—Fort Worth 1998) …………………………………………………………………..18, 19

*Frost Nat'l Bank v. Kayton*, 526 S.W.2d 654

(Tex. Civ. App.—San Antonio 1975) ................................................................... 27

*GATX Tank Erection Corp. v. Tesoro Petrol. Corp.*, 693 S.W.2d 617 (Tex. App.—San Antonio 1985) ............................................................................................... 11

*Hollingsworth Roofing Co. v. Morrison*, 668 S.W.2d 872 (Tex. App.—Fort Worth 1984) ..................................................................................................................... 19

*Juliette Fowler Homes, Inc. v. Welch Assocs.*, 793 S.W.2d 660 (Tex. 1990) ....... 10

*Moren v. Pruske,* 570 S.W.2d 442 (Tex. Civ. App.—San Antonio 1978) ............ 19

**Rules and Statutes**

Tex. R. App. P. 9.4 ................................................................................................ 28

**NO. 01-14-00779-CV**

In the Court of Appeals
First Judicial District of Texas
Houston, Texas

_____

**POINTE WEST CENTER, LLC**
*Appellant,*

*vs.*

**IT'S ALIVE, INC. AND SHAMIL QURESHI**
*Appellees/Cross-Appellants,*

_____

Appeal from County Civil Court at Law No. 1
Harris County, Texas
Cause No. 1022800

_____

**BRIEF OF CROSS-APPELLANTS IT'S ALIVE, INC. AND SHAMIL QURESHI**

_____

TO THE HONORABLE COURT OF APPEALS:

Cross-Appellants, It's Alive, Inc. and Shamil Qureshi file their Cross-Appellants' Brief.  For the reasons set forth herein, the Judgment entered in favor of Pointe West Center, LLC should be reversed and rendered.

1

## STATEMENT OF THE CASE

Appellant Pointe West Center, LLC, (the "Landlord"), sued Appellees/Cross-Appellants It's Alive, Inc., (the "Tenant"), and Shamil Qureshi, the guarantor, for breach of a commercial lease and for conversion and trespass to chattels. The Tenant filed a counterclaim for the Landlord's failure to return or account for the tenant's security deposit. At the conclusion of the Landlord's case, the Cross-Appellants made a motion for instructed verdict which was denied. After a three day jury trial, the jury found that It's Alive, Inc. and Shamil Qureshi breached the lease, committed acts of conversion and trespass to chattels. The jury answered $15,000 to the damage question for reasonable and necessary repair costs and refused to find that the Landlord was entitled to any other damages. The Trial Court, Honorable Debra Ibarra Mayfield, entered Judgment based on the jury's verdict. The Landlord filed a motion for judgment notwithstanding verdict which was denied, as was its motion for reconsideration. The Landlord filed its Notice of Appeal. The Tenant and Shamil Qureshi filed their Notice of Cross-Appeal.

## STATEMENT REGARDING ORAL ARGUMENT

Cross-Appellants do not believe oral argument is necessary. However, Appellant has requested oral argument and if the Court desires oral argument, Cross-Appellants would like the opportunity to appear and present oral argument.

## ISSUES PRESENTED FOR REVIEW

Cross-Appeal Issue No. 1. The Trial Court erred in denying Cross-Appellants' motion for instructed verdict because there was no evidence to support the submission of the issue on reasonable cost to repair the premises.

Cross-Appeal Issue No. 2. There is no evidence to support the jury's answer to Question No. 5(A) regarding the reasonable cost to repair the premises.

Cross-Appeal Issue No. 3. The Trial Court erred in rendering Judgment awarding any damages to Pointe West Center, LLC because there was no legally sufficient evidence to support the damages award.

## STATEMENT OF FACTS

Pointe West Center, LLC (the "Landlord") entered into a Shopping Center Lease with It's Alive, Inc. DBA Frank N Stein (the "Tenant") dated August 15, 2007. ([1]5 RR P. Ex. 1). The lease was for a five year term ending on August 15, 2012. The Lease was personally guaranteed by Shamil Qureshi ("Qureshi"). The Tenant put up a security deposit in the amount of $8,000. (5 RR P. Ex. 1, D Ex. 5)

By letter dated May 23, 2012, the Tenant informed the Landlord that it did not intend to exercise its option to renew the Lease. The letter also stated that the Tenant was looking for a purchaser of the Tenant's bar equipment, fixtures, and furniture, and noted that if the Tenant were successful in locating a buyer acceptable to the Landlord then the Landlord would have a new tenant. The Tenant also requested that if the Tenant went beyond the lease term the Tenant requested that it be allowed to remain in the space and pay the regular rent on a month to month basis at the current rent until they located a buyer or were not able to sustain the bar any longer. (5 RR D Ex. 3). Nabeel Qureshi testified that the Landlord agreed to that proposal. (4 RR 80-81). Shamil Qureshi also testified that the Landlord agreed that the Tenant could remain in the space during September

---

[1] **ABBREVIATIONS USED IN BRIEF**
RR     means Reporter's Record
CR     means Clerk's Record
P. Ex.   means Plaintiff's Exhibit
D. Ex.   means Defendants' Exhibit
5 RR   means volume 5 of the Reporter's Record

and pay the regular rent. (3 RR 190). The Landlord did not recall any written response to that letter but testified in a meeting that "we told them we would work with them and that was the extent of it." (3 RR 71-72) The regular rent was $10,000 a month (which included the triple net expenses). (4 RR 96). During September 2012, the Tenant introduced the Landlord to prospective tenants who were interested in buying the Tenant's business and equipment and fixtures and leasing the space from the Landlord, but the Landlord did not accept those tenants. (2 RR 27-28 and 3 RR 187-188). The Tenant remained in the space for the last two weeks of August and for the month of September. (3 RR 190). The Tenant tendered the regular rent during this time period and the Landlord accepted the regular rent payment without objection. (4 RR 96).

On September 27, 2012, the Landlord told the Tenant that if the Tenant were to remain in the premises on October 1, 2012, the Tenant would be required to pay $15,000 for the month of October. (4 RR 82). The Tenant told the Landlord that it could not afford to pay $15,000 a month rent and that the Tenant would be vacating the premises prior to October 1st. (3 RR 134). The premises were left in a messy condition as a result of the Tenant not having sufficient time to move out. (5 RR P Ex. 2). The Tenant vacated the property on September 30, 2012. (4 RR 95).

On October 5, 2012, the Landlord's attorney sent the Tenant a letter asserting that the Tenant had breached the Lease by failing to deliver the premises in substantially the same condition as existed upon the commencement of the Lease. (5 RR P Ex. 3). The Landlord stated that the "amount of money required to repair the damage caused by It's Alive, Inc. and to replace the equipment and fixtures removed in violation of the lease is estimated to be $28,400."

The Tenant's attorney responded to the Landlord's lawyer's letter on November 15, 2012 by requesting an itemized statement of the accounting for the Tenant's $8,000 security deposit as well as any supporting documentation for the damages claimed by the Landlord. (5 RR D Ex. 5). The Landlord was not aware of any response to that request. (3 RR 89) Fred Behzadi, the Landlord's only witness at trial, admitted that after the Landlord sent the initial demand letter on October 5, 2012 and even after the Lawsuit was filed on November 8, 2012, the Landlord did not create or keep a separate file on estimates and expenses relating to the repair work for the Tenant's space. (3 RR 83). Behzadi testified that he does not know whether a separate file for the repair expenses was ever set up or whether it was all part of the accounting records of the entire shopping center. (3 RR 83).

By letter dated March 26, 2013, the Tenant's counsel reminded the Landlord's counsel that the Tenant had served discovery requests on the Landlord asking for any documents concerning the damages claimed by the Landlord,

including repair estimates and receipts for repairs and noted that the only documents produced by the Landlord in response to the discovery were photographs of the premises after the Tenant vacated the property. (5 RR D Ex. 7). In response, the Landlord's attorney responded that the Landlord was getting together all of the receipts and invoices. (5 RR D Ex. 8).

At trial the Landlord called Fred Behzadi as its sole witness on the issue of damages. Mr. Behzadi was not called as an expert witness and no attempt was made to qualify him to express opinions about reasonable and necessary repair costs. Behzadi described his relation to Pointe West as the portfolio asset manager and a consultant to the company. (2 RR 19). Behzadi testified he had approximately 14 to 17 years' experience with commercial leases. (2 RR 19). Behzadi testified he had "some experience" with damage to commercial properties as a result of his experience with commercial leases. (2 RR 20). Behzadi was shown a series of photographs depicting the condition of the leased premises shortly after the Tenant vacated the property and asked to comment on the photographs. (5 RR P Ex. 2).

Behzadi testified that it would cost $57,373 to repair the premises so the Landlord could lease it to a new tenant. (3 RR 22). Behzadi testified that at some point in the lawsuit he instructed the accounting department to pull everything together. (3 RR 26) Mr. Behzadi was asked if he had a general idea of what the

7

Landlord had to expend and why. Mr. Behzadi answered that he knew they had their contractors do the work but, "what was paid to each or even who each is, I didn't know." "I have a better idea of it right now because, frankly, for preparation for this trial, last couple of days I've sat and talked to my property manager, who is this guy, who is that guy, who did you use, and I got a better idea of it right now. But who they are, what exactly each receipt is and all that, that's not my function that's – no." "I actually met with the property manager the day before yesterday, Aquino, and asked him, you know, who's this guy, who's that guy. This is one of the contractors that does basically general handyman work, some sheetrock repair, basic construction, nothing too complicated." (3 RR 23-25).

Appellant produced several exhibits consisting of timesheets of independent contractors and checks written to those contractors. Specifically, Pointe West offered timesheets showing several of its contractors working forty hours a week stretching over a five month period of time, (5 RR P Ex. 6, 10, and 11). There was no evidence presented to show what these contractors were doing and whether the repair costs were reasonable and necessary to repair damages caused by the Tenant to the leased space.

The largest single item making up Appellant's claim for damages was a check to Paragon Plumbing in the amount of $17,325. (5 RR P. Ex. 13). The check was not supported by any invoice. There is no notation on the check as to

what it is for. When Mr. Behzadi was asked about Paragon Plumbing, he testified that Paragon Plumbing was obviously a plumbing company. He also added: "What specifically they had to do, frankly, I wouldn't know exactly but they are a plumbing company." (3 RR 29).

The jury found that the reasonable cost to repair the damages to the Leased Premises was $15,000.00. (CR 190) The Trial Court entered a Final Judgment awarding that amount as actual damages and denying all other relief requested by the Landlord. (CR 295). Cross-Appellants filed a Notice of Appeal complaining about that damages award. Cross-Appeal. (1st Supp. CR 11).

## SUMMARY OF THE ARGUMENT

In order for a plaintiff to recover damages for the reasonable costs of repair of real property, the plaintiff must present evidence that the repair costs are reasonable and necessary. While it is not required that the testimony use the terms "reasonable" and "necessary" costs to restore the property, it is necessary for the plaintiff to present sufficient evidence from which the jury could conclude that the damages sought are the reasonable and necessary costs of the repairs required by the defendants' acts. In this case, Pointe West presented the jury with hundreds of pages of checks, timesheets, and receipts. There was no testimony that the costs sought to be recovered were reasonable and necessary. There was no testimony as to what the alleged repair costs were for. Contractors' timesheets stretching over a

9

five month period reflecting forty hours of work each week were offered but there was no evidence about what work was done; how the work related to the Tenant's space; why the work was necessary; and whether the charges for the work were reasonable. There were similar deficiencies with regard to the other damages claimed. As a result of the complete absence of the proof required for the recovery of repair costs damages, the Judgment in favor of Pointe West should be reversed and rendered.

## ARGUMENT AND AUTHORITIES

### Cross-Appeal Issue No. 1.

> The Trial Court erred in denying Cross-Appellants' motion
> for instructed verdict because there was no evidence to support
> the submission of the issue on reasonable cost to repair the
> premises.

A "no evidence" point of error may only be sustained when the record discloses one of the following: (1) a complete absence of evidence of a vital fact; (2) the court is barred by rules of law or evidence from giving weight to the only evidence offered to prove a vital fact; (3) the evidence offered to prove a vital fact is no more than a mere scintilla of evidence; or (4) the evidence established conclusively the opposite of a vital fact. *City of Keller v. Wilson*, 168 S.W.3d 802, 819 (Tex. 2005) and *Juliette Fowler Homes, Inc. v. Welch Assocs., Inc.*, 793 S.W.2d 660, 666 (Tex. 1990). Where the opposing party bears the burden of

proof, the court will sustain a legal-sufficiency challenge to an adverse finding if the review of the evidence demonstrates a complete absence of a vital fact, or if the evidence offered is no more than a scintilla. *Burbage v. Burbage*, 447 S.W.3d 249, 258 (Tex. 2014).

The jury was asked to determine the reasonable cost to repair the physical loss resulting from It's Alive, Inc.'s vacating the space. The jury answered $15,000. (CR 190). The jury answered $0 to the other subparts of Jury Question No. 5 as to the Holdover Penalty and the damage caused to property of the Landlord. The Landlord has not complained on appeal as to the jury's answers to the reasonable cost of repairs or to the damage to the Landlord's property.

A party seeking recovery for the cost of repairs must prove their reasonable value. *GATX Tank Erection Corp. v. Tesoro Petro. Corp.,* 693 S.W.2d 617, 619 (Tex. App.—San Antonio 1985, writ ref'd n.r.e.) See also, *Ebby Halliday Real Estate v. Murnan,* 916 S.W.2d 585, 588 (Tex. App.—Fort Worth 1996, writ denied). In *Murnan*, the plaintiff offered proof as to what it cost to repair a septic system. There was no testimony that the repair costs were reasonable or necessary. The Court of Appeals in reversing and rendering the judgment held that mere proof of amounts charged or paid does not raise an issue of reasonableness and such amounts ordinarily cannot be recovered without evidence showing the charges were reasonable.

In this case, the Landlord presented only evidence as to costs it supposedly incurred. In support of the Landlord's claim for damages, the Landlord offered Plaintiff's Exhibits 5 through 16 (5 RR P Ex. 5-16). This evidence consisted of checks (most of which were not supported by any invoice, estimate, or other documentation), timesheets of contractors, and receipts from Home Depot. Mr. Behzadi did not have much knowledge about these documents. Behzadi testified that these documents were gathered at some point in the litigation from the general accounting records for the shopping center and the other properties owned by the principal of the Landlord. (3 RR 83-84) Behzadi did not know if a separate file was ever set up for accounting relating to the repair of the Tenant's space. (3 RR 83) At no time did Behzadi testify that any of the repairs were reasonable or necessary. There was no evidence admitted into evidence that would allow the jury to make the finding that any of the repair costs for which the Landlord sought damages were reasonable and necessary.

Plaintiff Ex. 5 consisted of a bank statement and a check to Houman Basianlabahabadi with a notation for AC Repair. There was no testimony indicating what repair was done; whether it related to the Tenant's space; whether the repair was necessary to repair the A/C to the condition it was at the commencement of the Lease; or whether the amount was reasonable.

12

Plaintiff's Ex. 6 consisted of checks written to various individuals and the time sheets for those individuals. These individuals were identified as independent contractors performing work for the shopping center owned by the Landlord as well as for other properties owned by the principal of the Landlord, including an apartment complex and a downtown condominium project. (3 RR 58-59). The first two checks in the sequence are dated 10/10/12 and cover the pay period 09/23/12 through 10/07/12 for Tenoro and Aquino. Behzadi admitted that Tenoro and Aquino would not have been doing repair work in the Tenant's space in September 2012 since the Tenant was still in the space through the end of September. In Plaintiff's Ex. 6, there were three checks (discounting the duplicates) all dated October 26, 2012 to Lopez, Aquino, and Tenoro, for the pay period 10/8/12 through 10/21/12. There are two checks dated November 9, 2012, to Lopez and Aquino for the time period of 10/22/12 through 11/4/12. There are two checks dated 11/23/12 to Tenoro and Aquino for the time period 11/5/12 through 11/18/12. Finally, there are two checks in December 2012 to Aquino dated 12/7/12 and 12/21/12 covering the time period 11/18/12 through 12/16/12. Aquino was identified as the property manager. Behzadi did not know whether the hours reflected on the time sheets were for the full work period or part of the work period. (3 RR 57). None of the paychecks reference work on the Tenant's space. (5 RR P Ex. 6). There is no evidence as to the nature and extent of the work that

was done; whether the work was done to the Tenant's space; and whether the work was reasonable and necessary to repair the Tenant's space to the condition it was in at the commencement of the Lease.  Behzadi did not know when these documents were prepared. (3 RR 67)

Behzadi admitted that the time sheets were not signed by the contractors and were not shown as having been approved by any supervisor and that the time sheets were filled out by hand by someone and would show for the most part the contractor coming in each day at 8:00 a.m. taking a one hour lunch breach at noon and then coming back to work at 1:00 p.m. and leaving at 5:00 p.m. without variation for 80 hours of work. (3 RR 61). When asked if the Landlord was claiming that the contractor had worked all 80 hours in connection with work attributable to It's Alive's space, Behzadi said that was not his testimony.  (3 RR 63).  Behzadi said he could make an educated guess but that Aquino (the property manager) would know.  Behzadi also admitted that he did not know who prepared the time sheets or when they were prepared. (3 RR 66-67).

Plaintiff's Ex. 7 consisted of a check to home Depot Credit Card, a couple of Home Depot invoices, and a couple of Home Depot receipts. There was no evidence to prove that these items related to the Tenant's space; what the materials were for; or whether the changes were necessary and reasonable to restore the Tenant's space.

14

Plaintiff's Ex. 8 consisted of a check to Home Depot Credit Card without any supporting documentation or explanation.

Plaintiff's Ex. 9 consisted of the check admitted as Plaintiff's Ex. 5, along with an invoice from an A/C company. Mr. Behzadi identified "Houman" as the air conditioning guy. There was no further testimony regarding this charge. There was no evidence stating what this check was for; whether it had anything to do with the Tenant's space; or whether the charges were reasonable or necessary to restore the Tenant's space.

Plaintiff's Ex. 10 consists of six paychecks to workers and Aquino, the supervisor, dated from 1/4/13 through 2/1/13. (5 RR P Ex. 10). The last check covers the payroll period from 1/14/13, through 1/27/13. Again these appear to be full paychecks for two week periods of time with no reference to the Tenant; no description of the work being performed, and no evidence that the work is reasonable and necessary to restore the Tenant's space to its previous condition.

Plaintiff's Ex. 11 consists of duplicate of the first six checks in Ex. 10, but adds three checks to the independent contractors dated 2/1/13, 2/11/13, and 2/15/13. Again, no explanation as to if or why these workers were devoting full-time, 80 hours for two weeks to the Tenant's space four and one-half months after the Tenant had vacated the premises.

Plaintiff's Exhibit 12 consists of checks to Paragon Plumbing. The Landlord produced three checks payable to Paragon Plumbing. Two of the checks were in the amount of $1,408.08 (one dated 12/11/12 and the other dated 8/28/13). The Landlord also produced an invoice for work performed on 12/11/12 to repair and replace plumbing in the Frank N Stein's space. The total amount of this invoice was $2,808.00. (5 RR P Ex. 12). In all of the documents produced by the Landlord in support of its damages claim, this is only invoice that references the It's Alive space. Behzadi testified that Paragon Plumbing was obviously a plumbing company. He also added: "What specifically they had to do, frankly, I wouldn't know exactly but they are a plumbing company." (3 RR 29). Obviously, this is no evidence showing what Paragon Plumbing did; whether it related to the Tenant's space and whether it was reasonable and necessary.

In P Ex. 13 was another check to Paragon Plumbing dated 12/11/12 in the amount of $17,325. There was no reference other than "plumbing" on the check and no supporting invoice. Behzadi testified that a plumbing company broke up the concrete to see what was going on with the lines. (3 RR 32-33). There was no evidence as to whether the charges were reasonable or necessary and no description of the plumbing work referred to on the check.

Plaintiff's Exhibits 14, 15 and 16 consists of a hodge-podge of receipts from Home Depot without any supporting proof. (5 RR P Ex. 14, 15, 16). Mr. Behzadi

testified that the receipts were offered to show what was paid. (3 RR 99). When asked about several of these receipts, Behzadi testified he did not know why the particular receipts were included. (3 RR 100 and 101). In any event there was no evidence that the purchase of any of these items was necessary to repair damage to the Tenant's space or that the costs were reasonable. Nabeel Qureshi noted that there were Home Depot receipts were expenditures for 30 feet of barbed wire. (4 RR 89); 25 feet of ducting for washers and dryers (4 RR 89), residential shingles for roofing (4 RR 89), 62 spiral light bulbs for residential (4 RR 90), and multiple bags of concrete ordered one bag at a time which would not have been related to the Tenant's space. (4 RR 90). The Landlord made no effort to describe why it was necessary to purchase these items to repair the It's Alive space.

In essence, The Landlord dumped a bunch of cost documents on the jury and asked them to speculate as to what the costs were for and that such costs were incurred to repair the Tenant's space to the condition it was in at the commencement of the lease, and finally, that such costs were reasonable and necessary. There was no evidence admitted of reasonable and necessary repair costs. There was no evidence presented of any reasonable and necessary repair costs in excess of the security deposit made by the Tenant in the amount of $8,000. (5 RR P. Ex. 1, D Ex. 5) The Landlord took the security deposit and applied it to its costs. (3 RR 38, 5 RR P Ex. 4)

At the close of the Landlord's evidence, Defendants moved for an instructed verdict on the issue of the Landlord's claim for damages for the reasonable costs of repair. (4 RR 5-7). Defendants argued that the Landlord had merely presented evidence of costs and that there was no evidence that the repair costs were reasonable or necessary. The Trial Court denied the Defendants' motion for instructed verdict. (4 RR 19).

## Cross-Appeal Issue No. 2.

There is no evidence to support the jury's answer to Question No. 5(A) regarding the reasonable cost to repair the premises.

Evidence that a claimant believes that repairs were necessary is not sufficient. *Fort Worth Hotel Ltd. Pshp. v. Enserch Corp.,* 977 S.W.2d 746, 762 (Tex. App.—Fort Worth 1998). In *Enserch Corp.*, the Court of Appeals characterized the plaintiff's evidence as consisting of its witness reading a chart listing the alleged damages, the names of the companies that made the repairs or provided estimates, and the bills for work actually done. The plaintiff's witness did not address or even infer necessity or reasonableness of the repairs. The Court concluded that the "jury was left to speculate whether money spent on the work was reasonable and whether the particular work was necessary." The evidence presented by The Landlord does not even provide as much information as that deemed insufficient in *Enserch*. In *Enserch*, the judgment in favor of the Plaintiff was rendered. The evidence in this case is similar to the nature of the evidence

found deficient in *Enserch*. Appellant's sole witness on damages reviewed photographs and then Appellant offered checks, timesheets, Home Depot receipts, and a few invoices. (Plaintiff's Exhibits 5 through 16 (5 RR P Ex. 5-16). This evidence consisted of checks (most of which were not supported by any invoice, estimate, or other documentation), timesheets of workers, and receipts from Home Depot. Other than stating that Mr. Behzadi had asked the accounting department to gather documents relating to the work done in the Tenant's space, Mr. Behzadi had little or no other evidence to offer with regard to these Plaintiff's exhibits. There was no evidence as to the reasonableness, necessity of the repairs allegedly done, or even a description of the work done. (3 RR 23-26, 83).

Mr. Behzadi testified that it would cost $57,373 to repair the premises so the Landlord could lease it to a new tenant. (3 RR 22). There are at least two problems with that damage formulation. First, proof of costs or repairs or amounts paid is no evidence of the reasonableness or necessity of the repair costs. *Bradley v. Castro*, 591 S.W.2d 304, 306 (Tex. Civ. App.—Fort Worth 1979, no writ). Second, the proper measure of damages is the reasonable cost of repairs necessary to restore the property to its prior condition. *Hollingsworth Roofing Co. v. Morrison*, 668 S.W.2d 872, 875 (Tex. App.—Fort Worth 1984) and *Moren v. Pruske*, 570 S.W.2d 442, 444 (Tex. Civ. App.—San Antonio 1978, writ ref'd n.r.e.) The cost to make the premises ready for a new tenant is not the proper

19

measure of damages. The evidence showed that the Landlord was in negotiations with Taquerias Arandas prior to the termination of the lease. (3 RR 194). The Tenant was also in negotiations with Taquerias Arandas for the sale of the bar equipment and furnishings prior to the termination of the lease. (3 RR 194-195, 196-197).

After the Tenant vacated the space the Landlord showed the space to Taquerias Arandas in mid-October 2012 before doing any of the repairs. (3 RR 68). The Landlord produced an undated Lease Agreement with Taquerias Arandas. (5 RR P Ex. 17). The Lease Agreement contained an Exhibit "C" Schedule "I" which contained a description of the Landlord's work for Taquerias Arandas. At trial, the Landlord made no attempt to distinguish the work required to repair the It's Alive Space to its former condition at the time of the commencement of the lease as opposed to the work required by the new tenant.

In support of its claims for damages, the Landlord offered Plaintiff's Exhibits 5 through 16) (5 RR Plaintiff's Exhibits). Neither the Plaintiff's exhibits nor the sparse testimony elicited in support of these exhibits constitute any evidence that the repair costs sought by the Landlord were reasonable or necessary. Plaintiff Ex. 5 consisted of a bank statement and a check to Houman Basianlabahabadi with a notation for AC Repair. There was no testimony

20

indicating what repair was done or that the amount incurred was reasonable or necessary to repair the premises.

Plaintiff's Ex. 6 consisted of checks written to various individuals who were identified as independent contractors performing work for the shopping center owned by the Landlord and its affiliated companies and their timesheets. (3 RR 58-59). The checks and timesheets cover a time period from 09/23/12 through 12/16/12. Behzadi did not know whether the hours reflected on the time sheets were for the full work period or part of the work period. (3 RR 57). None of the paychecks reference work on the Tenant's space. (5 RR P Ex. 6). There is no evidence as to the nature and extent of the work that was done; whether the work was done to the Tenant's space; and whether the work was reasonable and necessary to repair the Tenant's space. This evidence constitutes no evidence of reasonable costs to repair the Tenant's space.

Plaintiff's Ex. 7 consisted of a check to home Depot Credit Card, a couple of Home Depot invoices, and a couple of Home Depot receipts. The mere introduction of invoices and receipts with no testimony of what the costs were incurred for and no testimony that the costs were reasonable is no evidence of the reasonable costs of repair.

Plaintiff's Ex. 8 consisted of a check to Home Depot Credit Card without any supporting documentation or explanation. This is no evidence of reasonable costs of repair.

Plaintiff's Ex. 9 consisted of the check admitted as Plaintiff's Ex. 5, along with an invoice from an A/C company. Mr. Behzadi identified "Houman" as the air conditioning guy. There was no further testimony regarding this charge. This is no evidence of reasonable repair costs for damages caused by the Tenant or Shamil Qureshi.

Plaintiff's Ex. 10 consists of more checks and timesheets for the Landlord's contractors covering the time period January to February 2013. (5 RR P Ex. 10). There was no testimony offered as to what these contractors were doing in the Tenant's space four and five months after the Tenant had vacated the space. There is no reference to the Tenant's space; no description of the work being performed, and no evidence that the work is reasonable and necessary to restore the Tenant's space. This is no evidence of reasonable repair costs.

Plaintiff's Ex. 11 consists of duplicate of the first six checks in Ex. 10, but adds three checks to the independent contractors dated 2/1/13, 2/11/13, and 2/15/13. Again, no explanation as to if or why these workers were devoting full-time, 80 hours for two weeks to the Tenant's space four and one-half months after

22

the Tenant had vacated the premises. This is no evidence of reasonable repair costs.

Plaintiff's Exhibits 12 and 13 consist of checks to Paragon Plumbing. The Landlord's evidence regarding the work done by the Landlord consisted of Mr. Behzadi testifying: "What specifically they had to do, frankly, I wouldn't know exactly but they are a plumbing company." (3 RR 29). There was no evidence of what Paragon Plumbing did and whether the repair costs were reasonable and necessary.

Plaintiff's Exhibits 14, 15 and 16 consists of a hodge-podge of receipts from Home Depot without any supporting proof. (5 RR P Ex. 14, 15, 16). Mr. Behzadi testified that the receipts were offered to show what was paid. (3 RR 99). When asked about several of these receipts, Behzadi testified he did not know why the particular receipts were included. (3 RR 100 and 101). In any event there was no evidence that the purchase of any of these items was necessary to repair damage to the Tenant's space or that the costs were reasonable. The Landlord's evidence is not evidence of reasonable repair costs.

## Cross-Appeal Issue No. 3.

The Trial Court erred in rendering Judgment awarding any damages to Pointe West Center, LLC because there was no legally sufficient evidence to support the damages award for reasonable costs of repair.

23

The lack of evidence presented at trial on the issue of reasonable cost of repair is understandable in light of the Landlord's apparent main focus at trial. Much of the testimony at trial offered by the Landlord was calculated to attempting to prove that the Tenant maliciously damaged the Landlord's property. The Landlord was seeking damages for conversion and trespass to chattels and the Landlord was seeking exemplary damages against the Tenant. (CR 190-193)

Fred Behzadi testified that the It's Alive Space was a "literally a war zone". (2 RR 30). Much of Mr. Behzadi's testimony concerned the bar installed by It's Alive. Mr. Behzadi testified that the bar belonged to the Landlord because it was affixed to the floor. (2 RR 35). Behzadi testified that It's Alive deliberately cut all of the panels to the bar and there was no purpose to that but to make the bar unusable. (2 RR 38).

On cross-examination, Behzadi testified he did not know what happened to the bar after the Tenant left and did not know if the bar was hauled off. (3 RR 50). While the Taquerias Arandas lease Landlord work order calls for the Landlord to remove the platforms for the booths, there is no reference to hauling off the bar. (5 RR P Ex. 17, schedule C-1). The evidence was uncontroverted at trial that Taquerias Arandas was using the bar in its space. (4 RR 72-74, 97, 98-99). (5 RR D Ex. 14).

The Landlord's evidence came from Fred Behzadi, who had no background in the construction industry. That evidence was largely contradicted by Ernest Gilpin, an experienced contractor with forty years' experience. (4 RR 21). Mr. Gilpin testified that the bar and platforms were designed to be removable (4 RR 25-26, 27). Mr. Gilpin described the move-out process and what he and other workers did to perform the move-out in contradiction to Mr. Behzadi's testimony of malicious vandalism. (4 RR 33). Mr. Gilpin described how he disconnected supply lines to the bar, removed a hand sink the Tenant had installed, which did not damage the sinks or plumbing; how everything electrical was disconnected, capped when necessary and the equipment removed. (4 RR 34). Mr. Gilpin testified regarding the drains and the fact there was no blockage or stoppage. (4 RR 38). Finally, Mr. Gilpin testified that the Landlord's photographs did not support the claim that there was flooding throughout the kitchen area. (4 RR 47-48).

The Landlord offered hundreds of pages to attempt to support its reasonable cost of repairs claim. (5 RR P. Ex. 5-16). The Landlord evidence produced at trial does not even show what sort of repair was done much less whether the repair costs were reasonable or necessary. For example, The Landlord offered timesheets showing several of its contractors working forty hours a week over a five month period of time, (5 RR P Ex. 6, 10, and 11) but there was no evidence showing what the contractors were doing and whether the repair costs were reasonable and

necessary to repair damages caused by the Tenant to the leased space. The Landlord offered several checks payable to Paragon Plumbing. (5 RR P Ex. 12 and 13). Two of the checks were supported by an invoice referring to work done on December 11, 2012 in the amount of $2,808 which stated repair and replace plumbing in restrooms and kitchen as needed Frank N Stein's restaurant space. (5 RR P Ex. 12) (In fact, this invoice was the only document that referenced the space occupied by It's Alive.) There was no evidence describing what plumbing repair word was done or what plumbing was replaced and why. The Landlord also offered another check to Paragon Plumbing dated December 11, 2012, in the amount of $17,325.00. (5 RR P Ex. 13). There was no invoice supporting this check. There is no description of the work done or materials involved or even whether it related to the space occupied by It's Alive, Inc. There was no testimony as to whether the repair costs were reasonable and necessary. Similarly, there were other checks, invoices and Home Depot charges but for none of these items did The Landlord present any evidence as to what work was done or what materials were ordered and whether the repair costs even related to the It's Alive space and whether the repair costs were reasonable and necessary.

There is a complete lack of evidence as to the specific work that was done. In order to recover damages for the repairs, the Landlord was required to prove that the specific work that was done was necessary to restore the property and the costs

26

spent on it were reasonable. *Dallas Railway & Terminal Co. v. Gossett*, 156 Tex. 252, 294 S.W.2d 377 (1956) and Frost *Nat'l Bank v. Kayton*, 526 S.W.2d 654(Tex. Civ. App.—San Antonio 1975, writ ref'd. n.r.e.). Costs incurred and invoices paid are not sufficient to show the reasonableness of the repairs. *Allright, Inc. v. Lowe,* 500 S.W.2d 190 (Tex. Civ. App.—Houston[14th Dist.] 1973, no writ). Appellant's evidence is clearly legally insufficient and constitutes no evidence of reasonable repair costs.

## PRAYER

Based on the foregoing, It's Alive, Inc. and Shamil Qureshi, Cross-Appellants respectfully request that the Court of Appeals reverse the Judgment awarding Pointe West, LLC actual damages in the amount of $15,000.00, and render Judgment that Pointe West, LLC take nothing.

Respectfully submitted,

DUNN, NEAL & GERGER, L.L.P.

By: _____/s/ James A. Dunn_____
    James A. Dunn
    Texas Bar No. 06244800
    3006 Brazos Street
    Houston, Texas 77006
    Tel.: (713) 403-7405
    Fax: (713) 960- 0204
    Email: jdunn@dnglegal.com
    Attorney for Appellees/Cross
    Appellants, It's Alive, Inc. and
    Shamil Qureshi

27

## CERTIFICATE OF COMPLIANCE

This Brief of Cross-Appellants complies with the typeface and length requirements of Texas Rule of Appellate Procedure 9.4 because:

(1)    This brief complies with typeface and the type style requirements of Rule 9.4(e) because the brief has been prepared in a conventional typeface using Word with Times New Roman 14-point font.

(2)    This brief complies with the length requirements of Rule 9.4(i)(2)(B) because it contains 7,042 words, excluding the parts of the brief exempted by Rule 9.4(i)(1)

/s/    James A. Dunn_____
James A. Dunn
Attorney for Cross-Appellants

28

## CERTIFICATE OF SERVICE

I certify that on March 25, 2015, a true and correct copy of the foregoing instrument was served on Appellant's counsel, Spencer E. Dunn, 4669 Southwest Freeway, Suite 760, Houston, Texas 77027, by electronic service through the e-filing case manager in accordance with the Texas Rules of Civil Procedure.

_____/s/ James A. Dunn____
James A. Dunn

# APPENDIX

1. Final Judgment

2. Jury Charge

**"CLOSED"**

NO. 1022800

| | | |
|---|---|---|
| POINTE WEST CENTER, LLC, | § | IN THE COUNTY CIVIL COURT |
| Plaintiff, | § | |
| | § | |
| v. | § | AT LAW NUMBER ONE (1) |
| | § | |
| IT'S ALIVE, INC. AND SHAMIL QURESHI, | § | |
| INDIVIDUALLY, AND AS AGENT FOR, | § | |
| IT'S ALIVE, INC. | § | |
| Defendants. | § | HARRIS COUNTY, TEXAS |

## FINAL JUDGMENT

On the day of 13th day of May. 2014, the above-entitled and numbered cause came on for trial to a jury. Plaintiff/Counter-Defendant Pointe West Center, LLC, ("Pointe West"), appeared through its representative and counsel, Defendants/Counter-Plaintiffs It's Alive, Inc. and Shamil Qureshi (collectively "Defendants") appeared through their representative and counsel. The appearing parties announced ready for trial.

After a jury was empaneled and sworn, it heard evidence and arguments of counsel. In response to the jury charge, the jury made findings that the court received, filed and entered.

Upon Motion for Entry of Judgment on Jury Verdict, the Court, having considered the Motion, any response, and the arguments of counsel, if any, is of the opinion and finds that final judgment should be entered on the evidence and the verdict of the jury.

The Court having considered the verdict of the jury finds that Plaintiff/Counter-Defendant Pointe West Center, LLC is entitled to recover from Defendants/Counter-Plaintiffs It's Alive, Inc. and Shamil Qureshi actual damages as set forth below.

It is therefore ORDERED, ADJUDGED and DECREED that Plaintiff Pointe West Center, LLC shall have and recover from Defendants It's Alive, Inc. and Shamil Qureshi, jointly and severally, actual damages in the amount of Fifteen Thousand and no/100 Dollars ($15,000.00).

1

**EXHIBIT**

1

295

It is further ORDERED, ADJUDGED AND DECREED that Plaintiff Pointe West Center, LLC shall also have and recover from Defendants, It's Alive, Inc. and Shamil Qureshi, jointly and severally, prejudgment interest at the rate of five percent (5%) per annum from November 8, 2012, (the date of the filing of the lawsuit) until date of Judgment.

It is FURTHER ORDERED, ADJUDGED AND DECREED that this Judgment in favor of Plaintiff, Pointe West Center, LLC and against Defendants, It's Alive, Inc. and Shamil Qureshi, shall bear post-judgment interest at the rate of five percent (5%) per annum from date of Judgment until paid.

It is FURTHER ORDERED, ADJUDGED AND DECREED that costs of court are hereby taxed against Defendants, It's Alive, Inc. and Shamil Qureshi, jointly and severally.

It is FURTHER ORDERED ORDER, ADJUDGED and DECREED that Defendants/Counter-Plaintiffs It's Alive, Inc. and Shamil Qureshi take nothing on their claims against Counter-/Defendant Pointe West Center, LLC.

The clerk of the court is directed to issue all writs and processes necessary for the enforcement of this judgment.

All relief not expressly granted is denied.

This is a final judgment which disposes of all claims and all parties and is appealable.

SIGNED this 18 day of June, 2014.

JUDGE DEBRA IBARRA MAYFIELD

FILED
2014 JUN 18 PM 2:25

2

APPROVED AS TO FORM:

By: _____
James A. Dunn
State Bar No. 06244800
DUNN, NEAL & GERGER, L.L.P.
3006 Brazos Street
Houston, Texas 77006
(713) 403-7405
(713) 960-0204-facsimile
Email: jdunn@dnglegal.com

**ATTORNEY FOR DEFENDANTS IT'S ALIVE, INC. AND SHAMIL QURESHI**


APPROVED AS TO FORM:


_____
Spencer E. Dunn
State Bar No. 00797848
4669 Southwest Freeway, Suite 760
Houston, TX 77027
Tel. (713) 589-4920
Fax: (713) 344-0867
Email: spenceredunn@aol.com

**ATTORNEY FOR PLAINTIFF**

3

297

No. 1022800

| | | |
|---|---|---|
| POINTE WEST CENTER, LLC | § | IN THE COUNTY CIVIL COURT |
|     Plaintiff, | § | |
| | § | |
| v. | § | AT LAW NUMBER ONE (1) |
| | § | |
| IT'S ALIVE, INC. AND SHAMIL QURESHI | § | |
| INDIVIDUALLY, AND AS AGENT FOR | § | |
| IT'S ALIVE, INC. | § | |
|     Defendants. | § | HARRIS COUNTY, TEXAS |

## CHARGE OF THE COURT

**Members of the Jury**:

This case is submitted to you by asking questions about the facts, which you must decide from the evidence you have heard in this trial. You are the sole judges of the credibility of the witnesses and the weight to be given their testimony, but in matters of law, you must be governed by the instructions in this charge. In discharging your responsibility on this jury, you will observe all the instructions which have previously been given you. I shall now give you additional instructions which you should carefully and strictly follow during your deliberations.

After the closing arguments, you will go to the jury room to decide the case, answer the questions that are attached, and reach a verdict. You may discuss the case with other jurors only when you are all together in the jury room.

Remember my previous instructions: Do not discuss the case with anyone else, either in person or by any other means. Do not do any independent investigation about the case or conduct any research. Do not look up any words in dictionaries or on the Internet. Do no post information about the case on the Internet. Do not share any special knowledge or experiences with the other jurors. Do not use your phone or any other electronic device during your deliberations for any reason.

Any notes you have taken are for your own personal use. You may take your notes back into the jury room and consult them during deliberations, but do not show or read your notes to your fellow jurors during your deliberations. Your notes are not evidence. Each of you should rely


EXHIBIT
2

on your independent recollection of the evidence and not be influenced by the fact that another juror has or has not taken notes.

You must leave your notes with the bailiff when you are not deliberating. The bailiff will give your notes to me promptly after collecting them from you. I will make sure your notes are kept in a safe, secure location and not disclosed to anyone. After you complete your deliberations, the bailiff will collect your notes. When you are released from jury duty, the bailiff will promptly destroy your notes so that nobody can read what you wrote.

Here are the instructions for answering the questions.

1. Do not let bias, prejudice, or sympathy play any part in your decision.

2. Base your answers only on the evidence admitted in court and on the law that is in these instruction and questions. Do not consider or discuss any evidence that was not admitted in the courtroom.

3. You are to make up your own minds about the facts. You are the sole judges of the credibility of the witnesses and the weight to give their testimony. But on matters of law, you must follow all of my instructions.

4. If my instructions use a word in a way that is different from its ordinary meaning, use the meaning I give you, which will be a proper legal definition.

5. All the questions and answers are important. No one should say that any question or answer is not important.

6. Answer "yes" or "no" to all questions unless you are told otherwise. A "yes" answer must be based on a preponderance of the evidence [unless you are told otherwise].

Whenever a question requires an answer other than "yes" or "no", your answer must be based on a preponderance of the evidence [unless you are told otherwise].

The term "preponderance of the evidence" means the greater weight of credible evidence presented in this case. If you do not find that a preponderance of the evidence supports a "yes" answer, then answer "no". A preponderance of the evidence is not measured by the number of witnesses or by the number of documents admitted in evidence. For a fact to be proved by a preponderance of the evidence, you must find that the fact is more likely true than not true.

7. Do not decide who you think should win before you answer the questions and then just answer the questions to match your decision. Answer each question carefully without considering who will win. Do not discuss or consider the effect your answers will have.

8. Do no answer questions by drawing straws or by any method of chance.

9. Some questions might ask you for a dollar amount. Do not agree in advance to decide on a dollar amount by adding up each juror's amount and then figuring the average.

10. Do not trade your answers. For example, do not say, "I will answer this question your way if you answer another question my way."

11. The answers to the questions must be based on the decision of at least 5 of the 6 jurors. The same 5 jurors must agree on every answer. Do not agree to be bound by a vote of anything less than 5 jurors, even if it would be a majority.

As I have said before, if you do not follow these instructions, you will be guilty of juror misconduct, and I might have to order a new trial and start this process over again. This would waste your time and the parties' money, and would require the taxpayers of this county to pay for another trial. If a juror breaks any of these rules, tell that person to stop and report it to me immediately.

## QUESTION NO. 1

Did It's Alive and/or Shamil Qureshi fail to comply with the Lease Agreement with Pointe West Center?

Answer "Yes" or "No" for Its Alive Inc.

Answer: _YES_

Answer "Yes" or "No" for Shamil Qureshi

Answer: _YES_

A failure to comply must be material. The circumstances to consider in determining whether a failure to comply is material include:

(a)    the extent to which the injured party will be deprived of the benefit which he reasonably expected;

(b)    the extent to which the injured party can be adequately compensated for the part of that benefit of which he will be deprived;

(c)    the extent to which the party failing to perform or to offer to perform will suffer forfeiture;

(d)    the likelihood that the party failing to perform or to offer to perform will cure his failure, taking into account the circumstances including any reasonable assurances; and

(e)    the extent to which the behavior of the party failing to perform or to offer to perform comports with standards of good faith and fair dealing.

**186**

If you answered Question No. 1 "Yes" then answer Question No. 2; otherwise do not answer Question No. 2.

## QUESTION NO. 2

Was the failure to comply with the Lease Agreement by either It's Alive, Inc. and/or Shamil Qureshi excused?

Failure to comply with the Lease Agreement is excused if such compliance is waived by Pointe West Center.

"Waiver" is the intentional surrender of a known right or intentional conduct inconsistent with claiming the right.

Failure to comply is excused if Pointe West Center failed to perform any conditions precedent to the Defendants' Alive's duty to comply.

Failure to comply is excused if the following circumstances occurred:

Pointe West Center

(a)     by words or conduct made a false representation or concealed material facts and with knowledge of the facts;

(b)     with knowledge or information that would lead a reasonable person to discover the facts, and

(c)     with the intention that It's Alive would rely on the false representation or concealment in acting or deciding not to act; and

It's Alive

(a)     did not know and had no means of knowing the real facts and

(b)     relied to its detriment on the false representation or concealment of material facts.

Answer "Yes" or "No" for Its Alive Inc.

Answer: __NO__

Answer "Yes" or "No" for Shamil Qureshi

Answer: __NO__

## QUESTION NO. 3

Did It's Alive, Inc. and/or Shamil Qureshi convert Pointe West Center's Property?

Conversion is the unauthorized exercise of dominion and control over property inconsistent with or to the exclusion of another's superior rights in that property.

Answer "Yes" or "No" for Its Alive Inc.

Answer: __YES__

Answer "Yes" or "No" for Shamil Qureshi

Answer: __YES__

## QUESTION NO. 4

Did It's Alive, Inc. and/or Shamil Qureshi trespass against Pointe West Center's Property?


Answer "Yes" or "No" for Its Alive Inc.

Answer: YES

Answer "Yes" or "No" for Shamil Qureshi

Answer: YES


To interfere wrongfully with the use or possession of property is a trespass to chattels. For liability to attach, causing actual damage to the property or depriving the owner of its use for a substantial period must accompany the wrongful interference.

## QUESTION NO. 5

What sum of money, if any, if paid now in cash, would fairly and reasonably compensate Pointe West Center, for the damages, if any, caused by the conduct of It's Alive's and/or Shamil Qureshi?

In arriving at an amount, if any, consider only the acts of It's Alive and/or Shamil Qureshi and do not include damages caused by any other source.

Consider the elements listed below and none other. Do not include interest on any amount of damages you find.

If your answer to Question 1 is "Yes" then answer the following question, otherwise do not answer the following question.

Consider the following elements of damages, if any, and none other.

(A) The reasonable cost to repair the physical loss resulting from Its Alive Inc.'s vacating the Leased Premises.

Answer in dollars and cents for damages, if any.

Answer: _15,000_

(B) The Holdover Penalty resulting from Its Alive, Inc.'s remaining on the premises after non-renewal of the lease.

Answer in dollars and cents for damages, if any.

Answer: _O_

(C) The damages caused to the property of the landlord.

Answer in dollars and cents for damages, if any.

Answer: _O_

Do not add any amount for interest on the damages. In answering questions about damages, answer each question separately. Do not increase or reduce the amount in one answer because of the instructions regarding, or your answers to, any other questions about damages. Do not

speculate about what any party's ultimate recovery may or may not be. Any recovery will be determined by the Court when it applies the law to your answers at the time of judgment.

Answer the following question regarding Its Alive Inc. and/or Shamil Qureshi only if you unanimously answered "Yes" to Question Nos. 3 or 4 regarding Its Alive Inc. and Shamil Qureshi, and you inserted a sum of money in answer to Question No. 5, then answer the following question. Otherwise, do not answer the following question.

To answer "Yes" to the following question, your answer must be unanimous. You may answer "No" to the following question only upon a vote of five or more jurors. Otherwise, you must not answer the following question.

### QUESTION NO. 6

Do you find by clear and convincing evidence that the harm to Pointe West Center resulted from malice or fraud?

"Clear and convincing evidence" means the measure or degree of proof that produces a firm belief or conviction of the truth of the allegations sought to be established.

"Malice" means--

1. a specific intent by It's Alive, Inc. and/or Shamil Qureshi to cause substantial injury to Pointe West Center; or

2. an act or omission by It's Alive, Inc. and/or Shamil Qureshi,

a. which when viewed objectively from the standpoint of It's Alive, Inc. and/or Shamil Qureshi at the time of its occurrence involves an extreme degree of risk, considering the probability and magnitude of the potential harm to others; and

b. of which of It's Alive, Inc. and/or Shamil Qureshi has actual, subjective awareness of the risk involved, but nevertheless proceeds with conscious indifference to the rights, safety, or welfare of others.

Answer "Yes" or "No" as to It's Alive, Inc.

Answer: _____


Answer "Yes" or "No" as to Shamil Qureshi

Answer: _____

Answer the following question only if you unanimously answered "Yes" to Question 6 as to one or both of the Defendants then answer the following Question as to any Defendant you answered Question No. 6 "Yes." Otherwise, do not answer the following question.

## QUESTION NO. 7

You must unanimously agree on the amount of any award of exemplary damages.

What sum of money, if any, if paid now in cash, should be assessed against It's Alive, Inc. and/or Shamil Qureshi and awarded to Point West Center as exemplary damages, if any, for the conduct found in response to Question No. 6.

Exemplary damages" means an amount that you may in your discretion award as a penalty or by way of punishment.

Factors to consider in awarding exemplary damages, if any, are--

1. The nature of the wrong.

2. The character of the conduct involved.

3. The degree of culpability of It's Alive, Inc. and/or Shamil Qureshi.

4. The situation and sensibilities of the parties concerned.

5. The extent to which such conduct offends a public sense of justice and propriety.

6. The net worth of It's Alive, Inc. and/or Shamil Qureshi.

Answer in dollars and cents, if any as to each Defendant.


Answer as to It's Alive, Inc.

Answer: _____


Answer as to Shamil Qureshi

Answer: _____

**QUESTION NO. 8**

Did Pointe West Center retain the security deposit of It's Alive in bad faith?

A landlord who fails to return a security deposit or to provide a written description and itemized list of deductions on or before the 60th day after the date the tenant surrenders possession is presumed to have acted in bad faith.

The landlord has the burden of proving that the retention of any portion of the security deposit was reasonable.

Answer "Yes" or "No"

Answer: ____NO____

If you answered Question No. 8 "Yes" then answer the following question; otherwise do not answer the following question.

## QUESTION NO. 9

What sum of money, if any, if paid now in cash, would fairly and reasonably compensate It's Alive, Inc. for the damages, if any, caused by the conduct of Pointe West Center?

Answer in dollars and cents for damages, if any.

Answer: _____



FILED
2014 MAY 16 PM 4:10

## Presiding Juror

1. When you go into the jury room to answer the questions, the first thing you will need to do is choose a presiding juror.
2. The presiding juror has these duties:
   a. have the complete charge read aloud if it will be helpful to your deliberations;
   b. preside over your deliberations, meaning manage the discussions, and see that you follow these instructions;
   c. give written questions or comments to the bailiff who will give them to the judge;
   d. write down the answers you agree on;
   e. get the signatures for the verdict certificate; and
   f. notify the bailiff that you have reached a verdict.

Do you understand the duties of the presiding juror? If you do not, please tell me now.

## Instructions for Signing the Verdict Certificate

1. [Unless otherwise instructed] You may answer the questions on a vote of 5 jurors. The same 5 jurors must agree on every answer in the charge. This means you may not have one group of 5 jurors agree on one answer and a different group of 5 jurors agree on another answer.
2. If 5 jurors agree on every answer, those 5 jurors sign the verdict.
   If all 6 of you agree on every answer, you are unanimous and only the presiding juror signs the verdict.
3. All jurors should deliberate on every question. You may end up with all 6 of you agreeing on some answers, while only 5 of you agree on other answers. But when you sign the verdict, only those 5 who agree on **every** answer will sign the verdict.

Do you understand these instructions? If you do not, please tell me now.

**MAY 15 2014**

_____
Judge Presiding

196

## Verdict Certificate

Check one:

_____ Our verdict is unanimous. All 6 of us have agreed to each and every answer. The presiding juror has signed the certificate for all 6 of us.

| | |
|---|---|
| _____ | _____ |
| Signature of Presiding Juror | Printed name of Presiding Juror |

_____ Our verdict is not unanimous. Five of us have agreed to each and every answer and have signed the certificate below.

| SIGNATURE | NAME PRINTED |
|---|---|
| 1. *David Anderson* | David Anderson |
| 2. *KS Hellstern* | Karen Hellstern |
| 3. *Trang Nguyen* | Trang Nguyen |
| 4. *Alisa Trudeau* | Alisa Trudeau |
| 5. *Lynda L Bixby* | Lynda Bixby |

197